No. 39,889

T. H. CORNELISON, and T. H. CORNELISON, as Administrator of the Estate of Daisy D. Cornelison, Deceased, *Appellants,* v. GERALDINE WALTERS, *Appellee.*

(290 P. 2d 1016)

Opinion filed December 10, 1955.

*Rodman L. Henry,* of Hiawatha, argued the cause and *L. E. Helvern* and *W. L. Stevenson,* both of Hiawatha, were with him on the briefs for the appellants.

*Roy V. Nelson,* of Hiawatha, argued the cause and *Chester C. Ingels,* of Hiawatha, was with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a petition for the allowance of a claim against an estate. The probate court allowed the claim. On appeal the district court allowed it. This appeal is from that judgment.

The story is told as well as any by the trial court's findings of fact.

Daisy D. Cornelison, in whose estate the claim was filed, and her husband, T. H. Cornelison, had separate bank accounts and property. On May 25, 1938, she bought a quarter section of land with her own money for $4,000; on December 16, 1949, she sold for $15,000; on January 1 she purchased with the proceeds of the sale of the farm three $1,000 and two $5,000 government bonds and took title "Mrs. Daisy Cornelison, P. O. D. Mrs. Geraldine Walters," her sister; on June 17, 1952, on petition of her husband filed June 16, 1952, Daisy was adjudged incompetent. Her husband, T. H. Cornelison, her only heir, was appointed guardian of her person and estate; on June 27, 1952, the inventory filed in her estate showed $2,500 in postal saving certificates, balance in the bank $2,582.56, $26,500 in government bonds in her name except the $13,000 bonds already referred to. The trial court further found the $13,000 bonds were bought by her manifesting her intention to make a gift of them after her death to Geraldine Walters; on June 27, 1952, the same day he filed the inventory T. H. filed a petition in Daisy's estate to sell the $13,000 bonds. This petition alleged the proceeds of these bonds were needed to pay debts of the estate, notwithstanding there was $2,582.56 in cash and other assets in the estate. The court found those allegations were untrue when they were made and did not reflect the true condition of the estate; the con-

version of the $13,000 P. O. D. bonds was not a proper act of administration and not necessary for the conservation of the estate. The petition was heard the day it was filed without any notice and on the same day the sale was authorized and the bonds were sold for $11,870; Daisy received $2,300 income from her farm and $2,400 from an uncle's estate; during this time she purchased as her sole and separate property $29,000 in U. S. bonds and postal savings; on March 12, 1953, the day of Daisy's death, T. H. paid himself $5,950.80 on a purported lump sum claim, which in no way reflected what amount of indebtedness the estate of Daisy may have had on the day she was declared incompetent. The $8,469.66 cash in Daisy's estate at death plus the T. H. Cornelison claim of $5,950.80 totaled approximately the same as the $2,582.56 cash she had when declared incompetent, plus the $11,870 received from the sale of the P. O. D. bonds; on March 12, 1953, Daisy died intestate and on March 16, T. H. was appointed administrator; the inventory in her estate filed March 25, 1953, listed $13,000 in bonds, $2,800 in postal savings, $8,469.66 in cash, a dwelling house and other personal property in the total amount of $27,979.66, being her sole and separate property; Daisy in having the $13,000 bonds issued in her name P. O. D. Geraldine Walters showed the intention of making a gift to Geraldine to become effective at the death of Daisy, and was not in violation of G. S. 1949, 59-602, and these bonds did not constitute more than one-half the value of her estate; the intended gift of $13,000 to Geraldine, payable on the death of Daisy, was never changed by Daisy during her lifetime; on July 15, 1953, Geraldine filed a petition for the allowance of a demand in Daisy's estate in the amount of $13,000, being the amount of the bonds, which were converted without notice to Geraldine into cash by T. H., guardian of the person and the estate of Daisy, and the sale was just discovered by Geraldine prior to the filing of her petition; the proceeds of the sale of the $13,000 bonds was not currently needed to pay for the reasonable maintenance of Daisy; T. H. at all times mentioned was the husband of Daisy.

The trial court made conclusions of law as follows:

"1. That the assets of the estate of Daisy D. Cornelison, Incompetent, could only be sold in accordance with G. S. 1949, 59-1804.

"2. It was the duty of the guardian to keep funds invested except such as might be currently needed to pay for the reasonable charges of support and maintenance of the ward in a manner suitable to her station in life.

"3. That the guardian as husband of the ward had a legal and natural duty to perform with regard to the support and maintenance of his incompetent wife, separate and apart from his duties as guardian, and collaterally considered the record fails to disclose that the $5,950.80 which guardian paid to himself on the date of the death of his ward was a proper charge against the ward's estate and paid under a proper order and scrutiny of the Probate Court on the presentation of a proper and legal claim therefor.

"4. That the conversion of the $13,000.00 in United States Government Bonds in the name of Daisy D. Cornelison P. O. D. to Geraldine Walters was illegal and with design to defeat the intention of Daisy D. Cornelison and that the sole and only effect of this wrongful conversion of the bonds into cash by the guardian was to change the nature of the corpus only, and in no manner altered, changed or determined the intention of Daisy D. Cornelison to give such bonds on her death to Geraldine Walters.

"5. That Geraldine Walters was entitled to proper legal notice of the intention to convert said bonds.

"6. That on the conversion of said bonds into cash the United States Government had no further interest in the matter, and the regulations of the United States Treasury Department are not applicable.

"7. That the guardian had no authority to change the form of the $13,000.00 in United States Government Bonds issued in the name of Mrs. Daisy D. Cornelison P. O. D. Mrs. Geraldine Walters, except as provided in G. S. 1949, 59-1804 and the conditions as provided therein did not exist.

"8. That on the death of Daisy D. Cornelison the $13,000.00 in Government Bonds had they remained intact according to the intention of Daisy D. Cornelison would have passed to Geraldine Walters had there been no illegal interference by the Guardian. The issuance of the $13,000.00 in Government Bonds to Daisy D. Cornelison P. O. D. Geraldine Walters was an intended in presenti act of Daisy D. Cornelison creating a gift to Geraldine Walters on the death of the donor, Daisy D. Cornelison, and Geraldine Walters thereby acquired a substantial interest in the subject matter of this action. In the absence of strict compliance with G. S. 1949, Section 59-1804 the guardian was without authority to interfere with the intention of Daisy D. Cornelison; that Daisy D. Cornelison was the only one who could have modified the gift or situation, and that Daisy D. Cornelison did not in her lifetime modify the gift to Geraldine Walters.

"9. That the cash into which the bonds were converted by her guardian is now an asset in the above estate as the sole and separate property of said deceased and the claimant is entitled thereto.

"10. That the act of the guardian in converting said bonds without complying to Section 59-1804, G. S. 1949, according to the intent thereof, and a proper notice to Geraldine Walters could not supersede the intention of Daisy D. Cornelison to create a gift on death to Geraldine Walters.

"11. That Section 59-602, G. S. Kansas, 1949, as amended, was not violated by the manner in which Daisy D. Cornelison caused the said $13,000.00 United States Savings Bonds to be issued for the reason that said bonds were the sole and separate property of Daisy D. Cornelison and for the further reason that said bonds did not constitute more than one-half of the value of the assets of the estate of Daisy D. Cornelison.

"12. That the intention of Daisy D. Cornelison and natural equities involved in this case are a sufficient reason and consideration to support the claim of Geraldine Walters against the estate of Daisy D. Cornelison, deceased, and judgment be, and hereby is rendered against the estate of Daisy D. Cornelison in the amount of $11,900.00, the value of said bonds as of this date, together with the sum of $489.47, the same being the accrued interest that would have been paid from the date of the death of Daisy D. Cornelison to this date on the $10,000.00 in 'G' bonds had they not been cashed as aforesaid, said claim being, and hereby is allowed in a total sum of $12,389.47, plus interest from this date at the rate of six per cent per annum until paid."

The administrator filed a motion for a new trial and to vacate the decision on the grounds of abuse of discretion, misconduct of the prevailing party, accident and surprise, erroneous rulings, decision contrary to the evidence, and newly discovered evidence. This motion was overruled.

The specifications of error set out that the trial court erred in overruling the demurrer to claimant's evidence; in entering judgment against the estate and in each conclusion of law reached.

The administrator states these two questions: Did the trial court err in overruling the demurrer to claimant's evidence? And did the trial court err in entering judgment against decedent's estate based upon erroneous conclusions and holdings of law, as set out and enumerated in the journal entry of judgment?

In his argument on the question whether his demurrer to claimant's evidence should have been sustained, he points out that the various probate court files introduced by claimant showed among other things that on March 16, 1953, T. H. filed his petition to close the guardianship and in it he charged himself with $9,560 proceeds from the sale of bonds and took credit for $5,950.80 for expense of Daisy and on March 18, 1953, the court ordered the petition be heard on March 20, and that notice of the time and place of hearing be waived, and on that day final accounting was approved.

The administrator points out the order of the probate court allowing the conversion of the bonds and the order approving the final accounting of the guardian were both unappealed from, and, therefore, final. He argues the present proceeding, therefore, is a collateral attack upon them and for that reason the administrator's demurrer to the evidence should have been sustained.

In neither the petition for permission to cash the bonds, which was denominated "A Petition To Sell Personal Property" nor the petition to close the ward's estate was any notice whatever given.

The guardian was appointed on June 17, 1952. His inventory was filed the 27th and on the same date the petition to cash the bonds was filed. This petition was heard the same day. It is true a collateral attack cannot be made upon an order of the probate court where the court had jurisdiction of the subject matter and of the parties. In this case, however, the orders spoken of were made without notice. Were they void? We have never decided the precise question, but we have considered some analogous ones.

In *Hicks v. King*, 157 Kan. 263, 139 P. 2d 390, we held under similar circumstances that an order giving permission to sell real estate of minors made without notice to the minors was void.

In *Osment v. Trout*, 156 Kan. 120, 131 P. 2d 640, we held:

". . . any person having a demand against the estate of a minor ward may present it to the probate court for allowance. The claim must be presented by petition signed and verified by or on behalf of the petitioner, and the provisions of the probate code relative to the court's fixing time and place of hearing and to the giving of notice, must be complied with as a condition precedent to any judgment allowing the claim."

In *In re Estate of Schroeder*, 158 Kan. 783, 150 P. 2d 173, we held:

"An order of the probate court setting apart a quarter section of land as the homestead of the widow made without notice to a creditor of the estate whose claim was pending in that court when the order was made is void as to the creditor for lack of notice."

In that case in the opinion we said:

"It is not clear, however, that these sections confer power on a probate court to have a hearing without notice of a matter wherein the result of the hearing would be to deprive an interested party of a valuable right. To so hold would be to confer power on the probate court which is not conferred on any other tribunal that we know of. Certainly the framers of the probate code had no such intention. See 12 Kansas Judicial Council Bulletin, 102 (July, 1938); also 2 Bartlett's Kansas Probate Law and Practice, 1015."

In *In re Estate of Oliver*, 162 Kan. 407, 176 P. 2d 574, we held, an order appointing an administrator *de bonis non* made without notice was void.

The authorities are unanimous in holding that a void judgment or order may be attacked collaterally. It follows, the two orders upon which the administrator relies in this case, that is, the order permitting the cashing of the bonds and the order approving his closing the guardianship estate, were nullities.

The administrator relies upon the provision of the regulations of the treasury department of the federal government. 31 CFR 315.38

provides, amongst other things that where an owner of a bond has been judicially declared incompetent and a guardian appointed, payment will be made only to such guardian or similar representative and a showing of the appointment must be made.

He argues from that all he needed to do as guardian of Daisy D. Cornelison's estate was to make a showing to the treasury department that he had been appointed her guardian. We cannot agree with that argument. The federal regulation is only for the purpose of facilitating the handling of matters between a bond owner and the department. It does not attempt to provide how matters between wards and guardians will be managed in the courts of our state. That is a matter controlled by state statutes.

Having reached the above conclusion, we must consider the fact that in his petition for permission to cash the bonds the guardian alleged proceeds from the sale were needed to pay debts and expenses incurred by his ward, when as a matter of fact his inventory filed the same day stated she had at that precise time $2,582.56 in the bank. Clearly the allegation in the petition was a misstatement of fact. Nor do we need to consider the question whether the way the guardianship was handled was a violation of G. S. 1949, 59-1804. That section provides in part as follows:

"A guardian shall be subject to the control and direction of the court at all times . . . A guardian of the estate shall . . . (2) sell assets of the estate when the interests of the ward and his estate require the sale thereof; . . . (6) invest all funds, except such as may be currently needed for the debts and charges aforesaid and the management of the estate. . . ."

The sale of these bonds was not required. The funds were not invested since at the time of the ward's death about a year later there was $8,950.80 cash in her estate rather than the $2,582.56 at the date of the inventory. The unseemly and unnecessary haste on the part of the guardian in cashing the $13,000 P. O. D. bonds unnecessarily without regard to the provisions of G. S. 1949, 59-1804, and without notice, falls far short of the meticulous care the law requires of guardians.

All this is persuasive here since we have decided the order permitting the cashing of these bonds was void and a nullity, also the guardian was the sole heir of his ward.

The administrator next argues, the trial court erred in entering judgment. It should be noted here the administrator does not question the correctness of the findings of fact. He did file a motion

for a new trial and it was overruled. The overruling of this motion was not one of the specifications of error, however. Hence it cannot be considered on appeal.

The basis of the administrator's argument on this point is that the bonds were a contract between the owner Daisy and the government, and the sole ownership and redemption of these bonds was controlled by the regulations of the United States Treasury Department, which had the force and effect of federal law in Kansas and supersede all state laws in conflict with them. Actually this argument is a two-edged sword as far as the administrator is concerned. Until the owner of the bonds was declared incompetent it is clear she could have converted these bonds or changed the manner of payment. She had not done so, however. Had it not been for the questionable conduct of the guardian, now the administrator, in securing the cashing of the bonds they would have been paid to Geraldine at Daisy's death and we would not have had this lawsuit. We have demonstrated the cashing was secured by a void order and was a nullity. The treasury department did not question the legality of the probate court's order. The courts of this state, however, are not powerless to question such conduct. While the bonds were cashed, the money received from them is still in the hands of the administrator.

The question was considered in *Slater v. Culpepper*, 222 La. 962, 64 So. 2d 234, 37 A. L. R. 2d 1216. There United States bonds were claimed because of the manner in which they had been registered. The court decided their ownership should be decided by the laws of Louisiana. The court held:

"1. United States Treasury regulations relating to ownership of bonds upon death of one or both co-owners were designed solely to facilitate government, by providing simple method for payment of saving bonds so that government would not be subjected to inconvenience and delays attendant to settlement of conflicting or disputed claims.

"2. Where wife bought federal government bonds with community funds naming herself and her husband as co-owners, the contract of purchase did not evidence gift by wife to husband in contemplation of death, though treasury regulations provided that in case of death, bonds would be paid to surviving co-owner, and, therefore, succession of wife who predeceased husband was entitled to one-half of the value of the bonds."

In *Rohn v. Kelley*, 156 Neb. 463, 56 N. W. 2d 711, the proceeds of co-ownership bonds cashed by the surviving co-owner were held to belong to the executor of the estate notwithstanding the treasury regulations. The court said:

"The government would have no interest as to how the assets of Florence Hendricksen's estate would be distributed, or that by the last will of Florence Hendricksen Ethel V. Kelley had no further rights in the estate so long as she retained the proceeds of the bonds. It seems clear that the federal laws and regulations are not intended to interfere with the positive act of two co-owners of bonds by which one conveys her interest in them to the other."

See, also, *Anderson v. Benson*, 117 Fed. Supp., 765; also *In re Guardianship of Damon*, 238 Iowa 570, 28 N. W. 2d 48.

The administrator cites and relies on what we held in *Lemon v. Foulston*, 169 Kan. 372, 219 P. 2d 388. The opinion is not in point here unless it be to hold that had the guardian not secured the cashing of these bonds, the proceeds would have gone to Geraldine, the claimant here, on the death of Daisy. No one disputes that. There was no fraud or questionable conduct on the part of the guardian in that case, such as we have here.

It follows the judgment of the trial court is affirmed.