No. 47,633

UNION NATIONAL BANK OF WICHITA, Administrator of the Estate of Marie Pierce, Deceased, *Appellee,* v. CLARA MAYBERRY, *Appellant.*

(533 P. 2d 1303)

Opinion filed April 5, 1975.

*Phillip Mellor,* of Holmes, Darrah and Mellor, of Wichita, argued the cause and was on the brief for the appellant.

*James F. Foster,* of Foster and Foster, of Wichita, argued the cause, and *Ronald K. Badger,* of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is a proceeding by an administrator to determine ownership and disposition of United States savings bonds, series "H," which were in the name of its decedent at the time of her death. Generally, the issue is whether a person who is under voluntary conservatorship may change the payable-on-death beneficiary on such bonds owned by her with the consent of her conservator but without benefit of an order of the probate court. The trial court held such a change was invalid and the purported beneficiary has appealed.

The determinative facts are not in dispute. During her lifetime the decedent, Marie Pierce, had purchased the bonds in question in the face amount of $22,500. These bonds were registered in her name as owner and were by her initially made payable on death (POD) to her sister, Emma Scruggs. Emma Scruggs died in 1963. In 1971, Mrs. Pierce, who was then a seventy-eight year old widow, was physically injured in an automobile accident which resulted in her hospitalization. Thereafter and on August 10, 1971, upon her own petition a voluntary conservatorship was established for

her in the probate court of Sedgwick county, pursuant to K. S. A. 1974 Supp. 59-3007. One reason given for establishing the conservatorship was "because a power of attorney was not sufficient." The court's order, which named the First National Bank of Wichita as conservator, expressly found that Mrs. Pierce was neither an adjudged incapacitated person nor a proposed ward or conservatee. Upon this appointment the First National Bank took physical possession of all of Mrs. Pierce's property, including the bonds in question.

On September 21, 1971, Mrs. Pierce went to the First National Bank and at her request and with the assistance of a bank official in the trust department obtained a change of the POD designee on the bonds in question from Emma Scruggs to Clara Winesberry. (The parties to this proceeding agree that Clara Winesberry is one and the same person as appellant Clara Mayberry, sister of Mrs. Pierce and her sole surviving sibling.) It appears the change of beneficiary was effected through the Federal Reserve Bank, using standard government forms signed by both Marie Pierce and the trust officer of the bank. The bonds were not cashed but were reissued in the name of Marie Pierce as owner with Clara Mayberry as POD beneficiary. The conservator did not obtain a probate court order authorizing or approving the change or the release of the bonds to Mrs. Pierce.

On September 14, 1972, the probate court, on a petition for involuntary conservatorship, found that Mrs. Pierce was then an incapacitated person and it appointed Clara Mayberry as guardian of her person and the First National Bank as conservator of her estate.

On March 31, 1973, Marie Pierce died intestate, without spouse or children, and shortly thereafter the probate court of Sedgwick county appointed the Union National Bank of Wichita administrator of her estate. The administrator bank then commenced this proceeding to obtain instructions as to the disposition of the bonds in question.

In district court trial was to the court. That court held that inasmuch as the conservator did not secure any probate court direction permitting or authorizing the change of the POD designee by Mrs. Pierce that the action of the conservator was outside and beyond the authority granted it by law and therefore void. The court directed that the bonds not be delivered to Clara Mayberry

but that they be distributed by the administrator as an asset of Marie Pierce's estate. Clara Mayberry has appealed.

In reaching its decision the trial court adopted appellee's argument that determination of the case is controlled by K. S. A. 1974 Supp. 59-3019, which enumerates the rights and duties of a conservator. Appellee argues the change of the POD beneficiary in the absence of a probate court order compromised the conservatee's estate; that the conservator exceeded its statutory authority in permitting the conservatee to make the change and consequently the change is a nullity.

Appellant contends a voluntary conservatee has the right to designate such a beneficiary without the approval of the conservator or the court absent a showing that the conservatee lacked the necessary mental capacity so to designate; that the change was not a disposition of any portion of the conservatee's estate at the time it was made and did not diminish her property in any way, and that Mrs. Pierce's only alternative to that which was done would be for her to have the conservatorship terminated, designate the POD beneficiary in the interim and then reinstate the conservatorship by a new voluntary petition.

Our present act for obtaining a guardian or conservator or both was enacted in 1965 to take effect January 1, 1966 (now K. S. A. 1974 Supp. Chap. 59, Art. 30). This act replaced our old probate guardianship proceedings. In it distinctions are made between an incapacitated person, a ward and a conservatee and between a guardian and a conservator. K. S. A. 1974 Supp. 59-3002 supplies these definitions:

"When used in this act: (1) The term 'incapacitated person' shall mean any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, advanced age, chronic narcotic drug addiction, chronic intoxication, or other cause to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning either his person or his estate.

"(2) The term 'guardian' shall mean any person who has been appointed by a court of competent jurisdiction to exercise control over the person of an incapacitated person or of a minor.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"(4) The term 'conservator' shall mean any person who has been appointed by a court of competent jurisdiction to exercise control over the estate of any person.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"(8) The term 'ward' shall mean a person who has a guardian.

"(9) The term 'conservatee' shall mean a person who has a conservator. . . ."

K. S. A. 59-3006 provides in pertinent part:

"The probate court having jurisdiction and venue of the proceedings may appoint:

. . . . . . . . . . . . . .

"(B) A conservator for

"(1) an adult who has made application pursuant to section 7 (59-3007) of this act;

"(2) an incapacitated person who is unable to make or communicate responsible decisions concerning his estate;

"(3) a minor."

K. S. A. 1974 Supp. 59-3007 provides that any adult person who is neither an adjudged incapacitated person nor a proposed ward or proposed conservatee may file an application for the appointment of a conservator for himself. Other statutes provide the procedure for establishing a conservatorship.

Thus it appears a mentally competent adult who has some physical condition or disability rendering the handling of his property difficult or impossible, may voluntarily apply to the probate court for appointment of a conservator of his estate. He may do this without the stigma of having a "guardian" as was the case under our prior law, associated as that term frequently was with the concept of mental incompetency or insanity. Euphemistically, this may be of significance to the individual affected although the functions of the conservator may be identical to those of a guardian of an estate under our former law. And in many situations the conservatorship might have the advantage over the sometimes used but questionable power of attorney in that the conservator is under bond under judicial supervision (see Cobean, "The New Kansas Philosophy Relating to 'Care and Treatment', 'Guardains' and 'Conservators'", 34 KBAJ, Winter, 1965, p. 329).

K. S. A. 1974 Supp. 59-3019 generally provides for the duties of conservator as follows:

"A conservator shall be subject to the control and direction of the court at all times and in all things. He shall (1) prosecute and defend for his conservatee; (2) sell assets of the estate when the interests of the conservatee and his estate require the sale thereof; (3) pay the reasonable charges for the support, maintenance, and educaiton of the conservatee in a manner suitable to his station in life and the value of his estate; but nothing herein contained shall release a natural guardian from obligations imposed by law as to the support, maintenance, and education of the conservatee in a manner suitable to his debts of the conservatee and the reasonable charges incurred for the support, maintenance, and education of his spouse and children; (5) possess and manage the estate, collect all debts and claims in favor of the conservatee, or with

the approval of the court compromise the same; and (6) invest all funds, except such as may be currently needed for the debts and charges aforesaid and the management of the estate, in [named securities and obligations or in a named manner]."

In its brief appellee suggests Marie Pierce may well have been mentally incompetent and subject to undue influence from Clara Mayberry at the time she made the change of beneficiary in her bonds. Those matters could have been made issues in the action in the trial court but they never were, no such adjudications were made and appellee's suggestion now is inappropriate. Mrs. Pierce was later declared to be an incapacitated person but at the time she made the change of beneficiary she must be regarded as mentally competent for the purposes of this action.

Federal treasury department regulations defining the rights of the owners and beneficiaries of United States savings bonds have the force and effect of federal laws (*Lemon v. Foulston,* 169 Kan. 372, 219 P. 2d 388). The regulation pertinent here provides that if the registered owner dies without the bond having been presented and surrendered for payment or authorized reissue and is survived by the beneficiary, upon proof of death of the owner the beneficiary will be recognized as the sole and absolute owner, and payment or reissue will be made as though the bond were registered in his name alone (31 CFR 315.67). Thus it would appear the plain intent of the owner is to be given effect unless to do so would violate some statute of our own or the dictates of public policy (see *In re Estate of Cornelison,* 178 Kan. 607, 290 P. 2d 1016, and cases therein cited). The statute relied on by appellee here to invalidate the change action is the following portion of K. S. A. 1974 Supp. 59-3019:

"A conservator shall be subject to the control and direction of the court at all times and in all things. He shall . . . (5) possess and manage the estate, collect all debts and claims in favor of the conservatee, or with the approval of the court compromise the same. . . ."

A conservator does have the duty to take charge of the conservatee's estate and manage and conserve it for the support of the conservatee. The conservator's duty, however, is to manage the estate during the conservatee's lifetime. It is not his function nor that of the probate court supervising the conservatorship directly to control disposition after death. A guardian has no power to make a will for his charge. Execution of a will by the latter does not therefore interfere with the fiduciary's function (see Allen, Ferster and

Weihofen, Mental Impairment and Legal Incompetency [1968], p. 283).

The foregoing principle forms the basis for the rule in Kansas as well as in virtually every other jurisdiction that a person under guardianship may execute a valid will if such person possesses the requisite testamentary capacity (*In re Estate of Hall*, 165 Kan. 465, 195 P. 2d 612; *In re Estate of Perkins*, 210 Kan. 619, 504 P. 2d 564; anno: Will-Capacity—Effect of Guardianship, 89 ALR 2d 1120; 1 Bowe-Parker: Page on Wills, § 1242).

And in similar vein with respect to designation of a beneficiary in a life insurance policy the universal rule is that the mental capacity necessary for a valid change of beneficiary by an insured is the same as that necessary to execute a valid will, deed or contract (44 Am. Jur. 2d, Insurance, § 1778, p. 692). Although not strictly in point we note that in the context vis-a-vis incompetent ward and his guardian it has been held the right to change the beneficiary in a life insurance policy owned by the ward remains a personal right of the insured over which the guardian has no power (see anno: Change of Incompetent's Beneficiary, 21 ALR 2d 1191). Here the ward or conservatee was not incompetent and the conservator consented to the change. In *In re Estate of Cornelison*, supra, a guardian who wrongfully sold government bonds owned by his ward was required to account for them to the POD beneficiary named by the ward prior to her adjudication of incompetency. In doing so this court commented:

"Until the owner of the bonds was declared incompetent it is clear she could have converted these bonds or changed the manner of payment." (p. 614.)

The rationale which allows a ward to dispose of property by will without the consent of his guardian or the court would seem to be applicable to disposition of savings bonds as in the present case. We have no precedent of our own with respect to our present voluntary conservatorship but find some elsewhere on an issue similar to that raised herein. California has an act pertaining to guardians and conservators closely parallel to our own (West's Ann. Cal. Probate Code 1973 P. P. § 1701, *et seq.*). A recent decision there, *Estate of Wood*, 32 Cal. App. 3d 862, 108 Cal. Rptr. 522, upheld the exercise of a power of appointment by a person who was mentally competent but for whom a conservator of the person and estate had been appointed. The court noted that a conservatee

may not make a present gift of assets of his estate, citing *Place v. Trent*, 27 Cal. App. 3d 526, 103 Cal. Rptr. 841, and then that the fact there is a legal guardianship does not establish the incompetency of a ward to make a will. The court explained that where an appointment of estate assets by the conservatee has the ambulatory character of a will, the conservatorship is no impediment to the exercise of the power because the appointment would not take effect until the death of the conservatee and the estate's assets would remain available for the conservatee's use if necessary during his lifetime.

The same reasoning should be applicable here with respect to designation of a POD beneficiary for savings bonds. The conservator did not surrender possession of the bonds for any purpose detrimental to the conservatee's estate. The conservator merely complied with the conservatee's request, enabling her to do something she was mentally competent to do—make disposition of certain property upon her death. The conservatee's estate was not thereby diminished during her lifetime. Under such circumstances it cannot be said the conservator exceeded its authority by permitting Mrs. Pierce to make the change of beneficiary or that her act was void and the trial court erred in ruling otherwise. Upon the showing made appellant is entitled to the bonds in question and it is so ordered.

The judgment is reversed.

APPROVED BY THE COURT.

FROMME, J., not participating.