(825 P.2d 1181)
No. 66,536

In The Matter of The Estate of Esther Pauline Briley, Deceased.

Opinion filed February 14, 1992.

*J. Michael Morris,* of Klenda, Mitchell, Austerman & Zuercher, of Wichita, for appellants.

*Kenneth H. Jack,* of Bruce & Davis, of Wichita, for appellee.

Before RULON, P.J., DAVIS, J., and JAMES P. BUCHELE, District Judge, assigned.

BUCHELE, J.: This is an action by joint account holders against an administrator, questioning the right of a conservator to terminate their interest in joint bank accounts which were established by the conservatee prior to her incapacity.

In July 1976, Pauline Briley established joint accounts at the Twin Lakes State Bank and Southwest Federal Savings and Loan (now Capitol Federal Savings & Loan) in Wichita. The Twin Lakes account carried John B. Morris, Briley's nephew, as an additional party and the Southwest account carried Carole A. Byram, her niece, as a joint tenant. Both accounts provided for equal access to the funds by the joint account holders. In April 1987, after Briley had suffered a stroke, Robert L. Davis was appointed conservator for Briley. The conservator shortly after his appointment closed both of the joint accounts and opened new accounts in his name as conservator in each of the respective financial institutions. The funds remained intact until Briley died on October 16, 1990, leaving as heirs her husband and two brothers.

This appeal is by the decedent's niece and nephew from the trial court's decision that the conservator's closure of the joint accounts terminated their interest and that the proceeds from the two accounts held by the conservator at the time of Briley's death were properly included as a part of the inventory of her probate estate. We reverse and remand this cause for further proceedings.

The issue presented in this appeal is a question of law. It involves the interest of joint account holders in funds withdrawn from the joint account by a conservator. It does not involve a conservator's authority to withdraw from or to close the joint account.

Our review of the trial court's decision is unlimited as to questions of law. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988). And, when the controlling facts are based on stipulations and documentary evidence, this court may determine de novo what the facts establish. *Bell v. Tilton*, 234 Kan. 461, 468, 674 P.2d 468 (1983).

We find no Kansas case which defines the rights of the surviving party to the proceeds from a joint account which remain in the hands of a conservator after the conservatee's death.

Kansas statutes give conservators broad powers. K.S.A. 1991 Supp. 59-3019. As a fiduciary, a conservator has a general duty to exercise the diligence and prudence ordinarily employed by reasonable people toward management of a conservatee's estate. *McAdam v. Fireman's Fund Insurance Co.*, 203 Kan. 123, 127, 452 P.2d 851 (1969). The conservator's duties include taking reasonable steps to manage and protect the conservatee's assets from dissipation, including dissipation by joint depositors or others with access to the property. K.S.A. 1991 Supp. 59-3019. See Restatement (Second) of Trusts § 175-80 (1957).

The powers of a conservator are not unlimited. The Kansas Supreme Court in *Union National Bank of Wichita v. Mayberry,* 216 Kan. 757, 761, 533 P.2d 1303 (1975), said:

"The conservator's duty, however, is to manage the estate during the conservatee's lifetime. It is not his function nor that of the probate court supervising the conservatorship directly to control disposition after death. A guardian has no power to make a will for his charge. Execution of a will by the latter does not therefore interfere with the fiduciary's function [Citation omitted.]."

"Although not strictly in point we note that in the context vis-a-vis incompetent ward and his guardian it has been held the right to change the beneficiary in a life insurance policy owned by the ward remains a personal right of the insured over which the guardian has no power (see anno: Change of Incompetent's Beneficiary, 21 ALR 2d 1191)." 216 Kan. at 762.

The Kansas Supreme Court in an earlier caᵉ voided the sale by a guardian of payable-on-death government bonds owned by the conservatee. The court noted that the sale of the bonds was not required to pay the conservatee's debts and expenses and therefore the sale fell "far short of the meticulous care the law requires of guardians." *In re Estate of Cornelison,* 178 Kan. 607, 613, 290 P.2d 1016 (1955).

One other Kansas case deals with a conservator's access to a joint tenancy account. This court adopted a case-by-case approach in deciding whether there was a conflict of interest between a conservator's fiduciary duty and his personal interest as a joint account holder. In *Fielder v. Howell,* 6 Kan. App. 2d 565, 631 P.2d 249 (1981), the co-conservators cashed a certificate of deposit they held in joint tenancy with the conservatee and deposited it in their personal account. Under the facts in *Fielder,* the co-conservators did not profit from their acts, as they would have

been entitled to the funds upon death of the conservatee as joint tenants. Also, the probate estate of the conservatee was not diminished because the funds were held in joint tenancy. The court found there was no harm done and the co-conservators were permitted to keep the money as the distribution of funds was in accordance with the wishes of the conservatee, expressed prior to incompetency. *Fielder* is distinguishable factually from the case at bar. Here the conservator's action directly affects the interest of the joint account holders and the amount of inheritance that will be received by the heirs of Briley's estate.

Our Supreme Court has also imposed a constructive or resulting trust upon joint tenancy property in certain circumstances to prevent injustice and overreaching. *Winsor v. Powell*, 209 Kan. 292, 497 P.2d 292 (1972); *Grubb, Administrator v. Grubb*, 208 Kan. 484, 493 P.2d 189 (1972).

The foregoing cases are precedent for the proposition that, in Kansas, courts will scrutinize actions which affect the interest of joint account holders or beneficiaries of an estate. Further, the cases are consistent with the general rule recognized in other states which we adopt, that when a joint account holder becomes incompetent and a conservator is appointed, the conservator does not succeed to the full discretionary personal rights of the conservatee in jointly held accounts. A conservator may withdraw funds from a joint account only to provide what is necessary for the conservatee's maintenance. See, *e.g., Howard v. Imes*, 265 Ala. 298, 90 So. 2d 818 (1956); *Drozinski v. Straub*, 383 So. 2d 301, 303 (Fla. Dist. App. 1980). See generally Annot. 62 A.L.R.2d 1091.

A conservator is not the alter ego of the conservatee and the decision to terminate joint accounts or change a beneficiary is a purely personal elective right of the conservatee. See, *e.g., Howard*, 265 Ala. at 300-01; *Rozycke v. Sroka*, 3 Ill. App. 3d 741, 745, 279 N.E.2d 155 (1972); *In re Wright Estate*, 430 Mich. 463, 470, 424 N.W.2d 268 (1988); *Hendricks v. Grant County Bank*, 379 P.2d 693, 697 (Okla. 1963); *Strain v. Rossman*, 47 Or. App. 57, 62, 614 P.2d 102 (1980). See generally Annot., 62 A.L.R.2d 1091. The decision regarding distribution of the conservatee's property after death belongs to the conservatee. *Union National Bank of Wichita v. Mayberry*, 216 Kan. at 761.

The appellee urges us to affirm the conservator's actions and terminate the joint account holders' rights based upon a doctrine of necessity, citing the conservator's duty to take charge of the conservatee's assets. The appellee further argues that the conservator must take title to joint accounts to protect them from dissipation by the joint account holders. While this is an issue of legitimate concern to a conservator, the conservator should protect the jointly held funds by obtaining a court order requiring court approval for all withdrawals by any party to the account. By following this procedure, the court may consider the conservatee's needs, the source of the funds, the intent of the conservatee, the interests of the joint account holders, the interests of the beneficiaries of the estate, and any other legal or equitable claims made by an interested party. This procedure also affords the joint account holders and beneficiaries notice and the opportunity for a hearing before their legal right or interest in the property is terminated. The conservator is also protected from future claims by interested parties.

We hold that a conservator's withdrawal of funds from a joint account does not have the effect of terminating the rights of a surviving joint owner to those funds and that the decision of the district court must be reversed for this reason.

During the trial of this case the parties stipulated that the Capitol Federal account was held in joint tenancy. The Twin Lakes account lacked the words necessary to create a joint tenancy. See *In re Estate of Wood*, 218 Kan. 630, 632, 545 P.2d 307 (1976). The appellants attempted to introduce evidence of Briley's intent in establishing this account, which was rejected by the trial court.

All evidence is admissible to prove a depositor's intent. *In re Estate of Wood*, 218 Kan. at 632-33. The issue to be determined would be the intent of the person creating the account at the time the joint account is established. Since Briley is deceased, the only source of evidence of the declarant's state of mind would be hearsay statements. However, they should be admitted since state of mind is directly in issue. See *State v. Hobson*, 234 Kan. 133, 154-55, 671 P.2d 1365 (1983).

We believe that testimony concerning the letter from Briley to Carole Byram is admissible evidence regarding the question

of Briley's state of mind at the time these accounts were established. We are unable to determine from the record whether any of the letters or conversations between Briley and Hershel Morris evidence Briley's intent prior to and/or contemporaneously with the establishment of the Twin Lakes account. Accordingly, we remand this evidentiary question to the trial court for further determination.

Reversed and remanded for further proceedings in accordance with this opinion.