(844 P.2d 759)

No. 68,204

TERRY CAMPBELL and BARBARA DEAN WALTERS, *Appellants*, v. TADD A. BLACK, Executor for the Estate of RUBY M. CAMPBELL, *Appellee.*

Opinion filed January 8, 1993.

*Gary R. Hathaway,* of Hathaway, Kimball & Campbell, of Ulysses, for the appellants.

*Chris Concannon,* of Concannon Law Offices, of Hugoton, for the appellee.

Before ELLIOTT, P.J., DAVIS and C. FRED LORENTZ, ·District Judge, assigned.

DAVIS, J.: The son and daughter of decedent, Ruby M. Campbell, filed a quiet title action claiming sole ownership of all joint accounts held with decedent. The executor of Ruby M. Campbell's estate was granted summary judgment based on his claim that the decedent effectively terminated all joint accounts before her death. The son and daughter appeal. We affirm.

Ruby and Burgis Campbell had four children: Eugene, Barbara, Yvonne, and Terry. Burgis Campbell died in 1986. Ruby Campbell died on December 13, 1990, and her daughter, Barbara Walters, and son, Terry Campbell, claimed the money in the following accounts:

1. Citizens State Bank CD #73254
   (allegedly payable on death [POD] to Barbara Walters)
2. Citizens State Bank CD #73393
   (allegedly POD to Terry Campbell and Barbara Walters)
3. Citizens State Bank checking account #1152960006
   (allegedly held in joint tenancy by Ruby and Terry Campbell)
4. Southwestern Savings and Loan Association money market demand account #52844
   (allegedly held in joint tenancy by Ruby Campbell, Terry Campbell, and Barbara Walters)
5. Southwestern Savings and Loan Association account #1591
   (allegedly held in joint tenancy by Ruby and Terry Campbell).

Their claim is based on the joint nature of the accounts. They did not claim at trial, nor do they claim on appeal, that they made any contribution to the accounts. All contributions to the accounts were made by Ruby Campbell or her husband, Burgis Campbell.

Most of the funds previously were held in joint tenancy with all four children. In 1986, the funds that were in or were used to establish four of the above accounts either were held in joint tenancy by Ruby and all four of her children or all four of her children were joint POD beneficiaries. Terry Campbell testified that in 1987, two of his siblings, Gene and Yvonne, filed suit against Terry and Ruby over some unspecified transactions. According to Terry, Ruby was angry about the lawsuit, and she deleted Gene and Yvonne as POD beneficiaries on the CDs. The

record indicates that Ruby removed Gene's and Yvonne's names from the CDs and accounts at about the same time.

In 1987, Ruby executed a will that expressly provided that survivorship rights be honored with respect to any property she held in joint tenancy with another and otherwise divided her estate equally among her four children. In December 1989, Ruby executed a codicil to her 1987 will and provided that any loans remaining unpaid at the time of her death and any gifts exceeding $1,000 were to be treated as advancements against the recipient's share of her estate.

On January 30, 1990, Ruby filed a petition for voluntary conservatorship. The next day, the court issued an order appointing her son, Terry, as conservator. The court did not determine that Ruby was incompetent, but appointed a conservator to assist Ruby with her affairs because of her physical limitations.

On October 24, 1990, Ruby executed a new will that simply divided her estate equally among her four children and provided that any gifts or advancements exceeding $1,000 be charged against the recipient's share of the estate. On the same date, Ruby sent the following one-sentence letter to each of the two financial institutions at which she had the above accounts: "Please have all accounts which I have converted to reflect me as the sole owner." The financial institutions did not honor Ruby's request to change her accounts to her sole ownership but froze the accounts because she was under conservatorship.

On the day Ruby died, Terry Campbell and Barbara Walters filed a petition to probate Ruby's 1987 will as modified by the 1989 codicil. Tadd Black, the executor named in her last will and testament dated October 24, 1990, filed an answer and cross-petition to probate her last will and testament. Terry and Barbara contested Ruby's last will and testament, alleging undue influence and lack of capacity. On April 25, 1991, the probate court found Ruby was competent to make her last will and testament on October 24, 1990.

The executor then filed the motion to have all accounts at Citizens State Bank and Southwestern Savings and Loan paid to him as executor. Terry and Barbara replied, and the record does not indicate the probate court ruled on this motion. Thereafter,

Terry and Barbara filed their present action to quiet title to the accounts in their names.

The executor moved for summary judgment, claiming that Ruby's letter to the financial institutions effectively changed the ownership of the joint accounts and the beneficiary status of the CDs, which rendered them the sole and separate property of Ruby's estate. The district court agreed and quieted title to all accounts in the estate of Ruby Campbell, deceased. Terry Campbell and Barbara Walters appeal, raising the following four issues: (1) Does a conservatee of a voluntary conservatorship have the capacity to change the nature of joint accounts? (2) Was the conservatee's request in this action legally sufficient to change the accounts? (3) If the request was effective, do the named beneficiaries still maintain an interest in the joint accounts as tenants in common? (4) Did the district court's decision violate equal protection?

## Does a conservatee of a voluntary conservatorship have the capacity to change the nature of joint accounts and POD CDs?

### a. POD Accounts·

The appellants correctly note that a voluntary conservatee does not have capacity to contract or to make inter vivos transfers that deplete the conservatorship estate. *Citizens State Bank & Trust Co. v. Nolte,* 226 Kan. 443, 452, 601 P.2d 1110 (1979). The holding in *Nolte,* however, is not dispositive of the issues here.

A conservatee retains the capacity to make testamentary dispositions. *Union National Bank of Wichita v. Mayberry,* 216 Kan. 757, 761-62, 533 P.2d 1303 (1975). The conservator's duty "is to manage the estate during the conservatee's lifetime. It is not his function, nor that of the probate court supervising the conservatorship, to control disposition of the conservatee's property after death." *Nolte,* 226 Kan. at 449. The authority of a conservatee to make testamentary dispositions includes the authority to change POD beneficiaries. *Mayberry,* 216 Kan. at 763. Ruby Campbell's voluntary conservatorship did not deprive her of the capacity or authority to change (or delete) the beneficiaries on her POD CDs.

### b. Accounts held in joint tenancy

Although Kansas appellate courts have not expressly held that

a conservatee has authority to terminate a joint tenancy account, our language in *In re Estate of Briley,* 16 Kan. App. 2d 546, 825 P.2d 1181 (1992), suggests that a conservatee retains such authority. In *Briley,* a conservator closed a joint account on which others were named and opened a new account in his own name as conservator. The other joint account holders appealed, and this court held that the conservator lacked authority to do what he did. We noted:

"A conservator is not the alter ego of the conservatee, and the decision to terminate joint accounts or change a beneficiary is a purely personal right of the conservatee. The decision regarding the distribution of the conservatee's property after death belongs to the conservatee." 16 Kan. App. 2d 546, Syl. ¶ 3.

Under the facts of our case, we conclude that Ruby Campbell, as conservatee in the present action, retained her purely personal right to terminate joint accounts or change a beneficiary.

It should be noted that the conservatorship in this case was established on a voluntary basis. Ruby, during the conservatorship, retained the right to write checks up to $1,000 and established the voluntary conservatorship because of physical, rather than mental, infirmities. Finally, the appellants contested Ruby's capacity to dispose of her property by testamentary disposition in her last will and testament, but lost on that issue in the probate court. On the same date Ruby executed her last will and testament, she directed the institutions holding her joint accounts and POD CDs to convert all funds to her sole ownership. Her capacity to make such a change and her intent to terminate the joint nature of the accounts is clear.

### Was the conservatee's request in this action legally sufficient to change the accounts?

The appellants claim that even if Ruby had the capacity to make the changes at issue, she did not comply with the formal requirements for making those changes. While the estate may be correct that this claim is not properly before this court, we elect to address the issue because appellants arguably raised it below.

### a. POD Accounts

Kansas law does provide that no change in the designation of

a POD beneficiary will be effective "unless executed in the form and manner prescribed by the bank and delivered to the bank prior to the death of the owner." K.S.A. 9-1215. Ruby complied with the provisions of this statute.

The appellants note that in *Mayberry*, the conservatee executed the proper forms to change the POD beneficiary on a bond and obtained a new bond designating the new beneficiary. In this case, the financial institutions did not honor Ruby's request and, instead, instructed her that she would have to obtain court approval to make the changes she requested.

Ruby was aged and dying of cancer when she executed her last will and testament on October 24, 1990, the same date she made her request to change her accounts to her name alone. Ruby's intent is clear from her contemporaneous will and letters to the financial institutions. She died fewer than six weeks after the date on the banks' letters informing her that they would not change the accounts without a court order. Given her physical condition and the clear expression of her intent, and a further indication by the institutions that they would consider her action legally sufficient but for the existence of the voluntary conservatorship, we conclude that Ruby's request was legally sufficient to change the POD accounts.

### b. Joint Tenancy Accounts

The appellants argue that a joint tenant could not unilaterally change ownership of the account because of the existence of the joint tenancy. However, a joint tenancy may be terminated (1) by mutual agreement of the parties, (2) by course of conduct indicating tenancy in common, or (3) by operation of law upon destruction of one or more of the required unities (time, title, interest, and possession). *Hutchinson National Bank & Trust Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

The creation of the voluntary conservatorship did not deprive Ruby of the capacity to terminate her joint accounts. Her unilateral conversion of the accounts to her sole ownership destroyed two of the basic unities of a joint tenancy—unity of possession and unity of interest. In converting the accounts to her sole

ownership, she exercised dominion and control over the accounts as if they were her own property.

Again, the evidence indicated that the financial institutions would have honored Ruby's request but for the existence of the conservatorship. Both institutions froze the assets merely because of the existence of the conservatorship. Ruby's letter to the institutions terminated the joint tenancy by destroying one or more of the essential unities of the joint tenant account.

### If the request to terminate the joint tenancy accounts was effective, do the named beneficiaries still maintain an interest in the joint accounts as tenants in common?

Termination of a joint tenancy results in a tenancy in common. *Brown*, 12 Kan. App. 2d at 675. The creation of a tenancy in common creates a rebuttable presumption of equal ownership. *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 462, 574 P.2d 1382 (1978).

In this case, the presumption has been rebutted. The money in the accounts belonged to Ruby. Appellants admitted that they made no contributions to the accounts. The banks stated that the money used to establish and maintain the accounts belonged to Burgis and Ruby Campbell. Appellants did not claim at trial, nor do they claim on appeal, that they made any contributions to the accounts. Even though Ruby's action may have created a tenancy in common, the evidence indicated that she was entitled to sole ownership of the money in all accounts.

### Did the district court's decision violate equal protection?

Appellants claim that the trial court's action violates equal protection because it effectively allows Ruby to withdraw funds, while *Briley* prohibits a conservator who is also a joint account holder, from withdrawing funds without a court order. *Briley*, however, does not prohibit a conservator from withdrawing funds. *Briley* merely holds that a conservator should obtain court approval for all withdrawals by any party to the account.

Finally, appellants' equal protection argument overlooks the purpose of the conservatorship. The conservator is a fiduciary

appointed to conserve the estate for the benefit of the conservatee. That he also is a joint account holder does not alter his fiduciary obligations. Terry Campbell voluntarily accepted this fiduciary obligation when he agreed to serve as his mother's conservator. He was appointed to act for her benefit and in her interest and to protect the assets for her estate. This does not present a question of equal protection for joint account holders. The conservator and conservatee are not in the same relationship as mere joint account holders. The conservator owes a fiduciary obligation to the conservatee to act for her benefit and protection.

Affirmed.