555 S.E.2d 406

**Nan MAYER, Cindy Coleman and Joe Holland, Appellants,**

**v.**

**M.S. BAILEY & SON, Bankers, now by acquisition and merger, Anchor Financial Corporation, d/b/a Anchor Bank, Respondent.**

No. 3399.

Court of Appeals of South Carolina.

Heard Oct. 1, 2001.

Decided Nov. 5, 2001.

Robert C. Wilson, Jr., of Greenville, for appellants.

Robert L. Widener and Benjamin E. Nicholson, V, both of McNair Law Firm, of Columbia, for respondent.

PER CURIAM.

Nan Mayer, Cindy Coleman, and Joe Holland appeal the trial court's order granting summary judgment to M.S. Bailey & Son, Bankers. We affirm.

## FACTS/PROCEDURAL BACKGROUND

In the early 1970s, Joe S. Holland ("Mr. Holland") established his estate plan through the creation of the Joe S. Holland Family Trust and the corresponding execution of his last will and testament. Mr. Holland's estate plan included three trusts, Trust A, the Insurance Trust, and Trust B, for which M.S. Bailey & Son, Bankers ("Bankers") was named trustee.[1] Trust A and the Insurance Trust were designed to pay Mrs. Holland all the income and, in the trustee's discretion, any principal from the trusts necessary for her "medical care, comfortable maintenance, and welfare" during her lifetime. Upon Mrs. Holland's death, subject to her exercising a power of appointment, the remaining principal was to pass to

---

1. Only Trust A and the Insurance Trust are subjects of this action, Trust B being satisfactorily distributed to Appellants in 1991.

Mr. Holland's three children, the Appellants. Mr. Holland died on November 13, 1988, and was survived by his wife and three children. Trust A had initial assets of $4,432.88 and the Insurance Trust had initial contributions of $126,873.86.[2]

Sometime prior to 1993, Nan Mayer contacted an attorney and the Laurens County Probate Judge regarding the perceived waste of trust assets in the form of distributions to her alcoholic mother. Appellants, however, took no further action to complain of waste or the management of the trusts at that time.

During its tenure as trustee, Bankers sent Mrs. Holland and Appellants quarterly and year end statements.[3] Appellants do not dispute that these statements were forwarded to them. The trial judge found:

> Each statement received by the [Appellants] detailed the status of each Trust of "Income Cash" and "Principal Cash." Each withdrawal from each trust account was also outlined in the statements. The final statement sent to [Appellants] for Trust A is dated January 31, 1994 and reflects under the "Review of Assets" section a zero balance for "Total Cash" and "Grand Total," a "Total Market Value" of zero, "Income Cash" of zero, and "Principal Cash" of zero. This account was closed by [Bankers] and therefore this trust terminated on January 10, 1994.
>
> Likewise, the Insurance Trust account's final statement dated September 30, 1993 reflects a zero balance of Total Cash, Grand Total, and Total Market Value. It shows zero for the Ending Balance of Income Cash and Principal Cash. This account was closed by [Bankers] and this trust terminated on September 15, 1993.

On November 5, 1995, Nan Mayer sent a letter to Bankers inquiring about the status of the trust accounts. By letter of

---

**2.** The trial judge considered these trusts together, finding "[a]lthough [Appellants'] Complaint [filed November 5, 1999] references only one trust, it appears that they consider Trust A and the Insurance Trust jointly as one."

**3.** These statements are not included in the record. Instead, the information regarding these statements comes from the trial court's order granting summary judgment.

November 27, 1995, Bankers responded: [4]

I regret the delay in responding to your letter of November 5, 1995. However, as you might recall, three different trusts were brought into being by your father's death, and it has taken this length of time to retrieve the data on each of these from our archives. In the will of Mr. Holland, two trusts designated Trust "A" and Trust "B" were established. Trust "A" was for the benefit of Mrs. Holland and Trust "B" was for the benefit of Mr. Holland's mother. Trust "B" was to be distributed to you and your brother and sister at the death of your grandmother. This Trust "B" was distributed in this manner and closed October 31, 1991. There was a third trust that became operational at the death of Mr. Holland called an Insurance Trust. Both Trust "A" and the Insurance Trust had as their terms that you and your brother and sister were to receive any principal remaining in these trusts at the death of your mother, if she had not directed any different distribution by her last will. The terms, however, further stipulated that the principal of both of these trusts could be used for your "mother's medical care, comfortable maintenance, and welfare". During the period after your father's death, your mother's expenses amounted to more than the income available to her and income from both trusts had to be supplemented by distributions from the principal of both trusts in the manner prescribed in the legal documents setting up the trusts initially. This resulted, over time, in the depletion of all of the assets in these trusts.

Trust "A" established under the will of Mr. Holland was closed January 10, 1994, and the Insurance Trust was closed September 15, 1993. I have enclosed a copy of the final report of each of these trusts which reflect their final expenditures.

Mrs. Holland died February 28, 1997. Thereafter, in February 1998, Appellants filed a complaint against Bankers in the court of common pleas. This action was eventually dismissed without prejudice in October of 1999 for lack of jurisdiction. Appellants next filed the same complaint in the

---

4. The letter is not included in the record on appeal. The text, republished in full, is from the trial judge's order.

probate court on November 5, 1999, alleging causes of action for: (1) breach of contract in implementing the trusts and estate plan; (2) breach of contract accompanied by a fraudulent act as to Appellants as third-party beneficiaries of the trusts; (3) breach of fiduciary duty to the Appellants as third-party beneficiaries; and (4) violation of the South Carolina Unfair Trade Practices Act.[5]

On December 14, 1999, Bankers filed a motion for summary judgment asserting as a complete defense to Appellants' complaint the statutes of limitation in Title 62 and Title 15 of the South Carolina Code. The trial judge granted summary judgment for Bankers on all causes of action. This appeal followed.

## STANDARD OF REVIEW

"The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder." *George v. Fabri*, 345 S.C. 440, 548 S.E.2d 868, 874 (2001) (citing *Bankers Trust of S.C. v. Benson*, 267 S.C. 152, 155, 226 S.E.2d 703, 704 (1976)). Even if there is no dispute as to evidentiary facts, summary judgment is not appropriate where there is a dispute as to a conclusion to be drawn from those facts and to clarify the application of the law. *Tupper v. Dorchester County*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997). However, summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Mosteller v. County of Lexington*, 336 S.C. 360, 362, 520 S.E.2d 620, 621 (1999). In determining whether any triable issue of fact exists, as will preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998).

## DISCUSSION

Appellants contend that in their action the general statute of limitations under S.C.Code Ann. § 15–3–530 (Supp.

5. S.C.Code Ann. §§ 39–5–10 to 39–5–560 (1985 & Supp.2000).

2000), is preempted by the Probate Code statute of limitations. We agree that actions concerning the administration of trust accounts fall squarely within the Probate Code statute of limitations. *See* S.C.Code Ann. § 62–1–302(a)(3) (Supp.2000). Appellants further argue their action was timely filed because, as contingent remaindermen of the trust accounts, they did not have a justiciable interest, and thus no standing to initiate a suit against Bankers until their interests became fully vested upon the death of Mrs. Holland, the life tenant of the trusts. We disagree.

The probate court, "except as otherwise specifically provided ... has exclusive original jurisdiction over all subject matter related to ... trusts, inter vivos or testamentary, including the appointment of successor trustees." S.C.Code Ann. § 62–1–302(a)(3) (Supp.2000). Further, the probate court "has exclusive original jurisdiction of proceedings initiated by *interested parties* concerning the internal affairs of trusts .... administration and distribution of trust, the declaration of rights, and the determination of other matters involving trustees and beneficiaries of trusts...." S.C.Code Ann. § 62–7–201(a) (Supp.2000) (emphasis added). Under the code, an " 'interested person' includes heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against a trust estate...." S.C.Code Ann. § 62–1–201(20) (1987). A " 'beneficiary,' as it relates to trust beneficiaries, includes a person who has any present *or future interest,* vested *or contingent* ..." S.C.Code Ann. § 62–1–201(2) (1987) (emphasis added). Inasmuch as the Probate Code affords contingent remaindermen standing to pursue actions involving "alleged misconduct of a fiduciary, in connection with the creation, administration and depletion of trusts," we hold that as a minimum the Appellants had both standing and justiciable rights that a court of equity could protect. *See* S.C.Code Ann. §§ 62–7–201(a), 62–1–201(2) & (20) (1987 and Supp.2000).

The administration of trust accounts is controlled by Article 7 of the Probate Code. *See* S.C.Code Ann. §§ 62–7–101 through–709 (1987 & Supp.2000). The code establishes either a one or three year statute of limitations, depending on the extent of disclosure, within which a beneficiary is required to

initiate a lawsuit against the trustee for mismanagement of the trust accounts:

> Unless previously barred by adjudication, consent, or limitation, any claim against a trustee for breach of trust is barred as to any *beneficiary who has received a final account or other statement fully disclosing the matter and showing termination of the trust relationship between the trustee and the beneficiary* unless a proceeding to assert the claim is commenced *within one year* after receipt of the final account or statement. In any event and notwithstanding lack of full disclosure a trustee who has *issued a final account or statement received by the beneficiary and has informed the beneficiary of the location and availability of records for his examination is protected after three years.* A beneficiary is deemed to have received a final account or statement if, being an adult, it is received by him personally. . . .

S.C.Code Ann. § 62–7–307 (1987) (emphasis added).

Here, Appellants received a final accounting stating the Insurance Trust was valued at zero and that Bankers considered the trust relationship terminated by letter dated September 30, 1993. Likewise, Appellants received a final accounting and termination statement concerning Trust A by letter dated January 31, 1994. Appellants do not claim they never received these notices; rather, they argue the documents were insufficient to commence the one year statute of limitations period. We disagree.

According to the trial judge's description of these documents, the quarterly and year-end statements "detailed the status of each Trust" and the final statements showed the balance as zero. Generally, a trust can only exist if it has a beneficiary and it is funded. *Restatement (Second) of Trusts* § 66 (1959). Although a trust does not terminate or lapse merely by reason of the alleged misconduct or violation of the trust by the trustee, *see Johnson v. Thornton,* 264 S.C. 252, 259, 214 S.E.2d 124, 128 (1975), clearly a trust is deemed terminated for the purpose of calculating the limitations period when the trust is depleted. Therefore, the limitations period for Appellants' action alleging mismanagement of the trust accounts accrued no later than one year after their

receipt of the final accountings of the trusts. Appellants, however, failed to commence their action until November 4, 1999.

Moreover, Appellants failed to timely file their action after the receipt of the letter from Bankers in November 1995. This letter clearly satisfies both the one year and three year contingencies under the Probate Code. It explained the depletion of the accounts and that Mrs. Holland's expenses were more than the income of the trusts, thus necessitating an invasion of the principal. This letter expressed the Bank's contrition for its delay after receipt of Nan Mayer's letter of inquiry because the necessary documents had to be retrieved from the archives. Thus, by the November letter, Appellants were given a final accounting of the trusts, and inferentially informed of the availability and location of the trust records for review. Under this provision, Appellants were required to initiate their action no later than the end of November 1998. Nevertheless, they did not file their action in the probate court until November 4, 1999. Therefore, their action was not timely filed.

The Appellants also argue that under the common law of South Carolina, the Statute of Limitations did not begin to run against them as remaindermen until the death of their mother, inasmuch as they did not possess a justiciable right until that time. They assert that "the gravamen of the causes of action asserted by [them] is founded upon the Bank's alleged misconduct as a fiduciary, in connection with the creation, administration, and depletion of trusts." They then argue that the Probate Code provides the exclusive remedy for resolving such disputes. Having conceded the Probate Code governs this action, they may not now argue the non-expiration of the general statute of limitations under the common law. Moreover, and in any event, upon the death of their mother, the Appellants were no longer contingent remaindermen. We have been furnished no reason why the one year statute of limitations in the Probate Code did not run prior to the institution of Appellants' lawsuit.

Finally, as to Appellants' causes of action for breach of contract and unfair trade practices, the trial court implicitly dismissed them when it granted summary judgment and there

has been no appeal from the trial court's order based on that dismissal. See *First Union National Bank of S.C. v. Soden,* 333 S.C. 554, 566, 511 S.E.2d 372, 378 (Ct.App.1998) ("Failure to challenge the ruling is an abandonment of the issue and precludes consideration on appeal. The unchallenged ruling, right or wrong, is the law of the case and requires affirmance.")

Accordingly, the order of the trial court is

**AFFIRMED.**

HEARN, C.J., CURETON and HOWARD, JJ., concur.