No. 04-847

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 332

SCOTT STAVE, CONSERVATOR OF THE
ESTATE OF LENORA O. RUTLEDGE,
A PROTECTED PERSON,

      Plaintiff and Appellant,

   v.

ESTATE OF ARVID B. RUTLEDGE, a/k/a BILL RUTLEDGE,
Deceased, and GERALD E. RUTLEDGE, CHERYL LYNN ANDERSON
and KELLY RUTLEDGE,

      Defendants and Respondents.

APPEAL FROM:    The District Court of the Twelfth Judicial District,
                 In and For the County of Chouteau, Cause No. DV 02-07,
                 Honorable David G. Rice, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           K. Dale Schwanke, Jardine, Stephenson, Blewett & Weaver, P.C.
           Great Falls, Montana

      For Respondents:

           Ward Taleff, Taleff Law Office, Great Falls, Montana

           Patrick L. Paul, Attorney at Law, Great Falls, Montana

                        Submitted on Briefs:  October 11, 2005

                                Decided:  December 20, 2005

Filed:

                             Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Scott Stave, as Conservator of the Estate of Lenora Rutledge, appeals from the Findings of Fact, Conclusions of Law and Decree of the District Court for the Twelfth Judicial District, Chouteau County, wherein the court concluded that Lenora was competent to effect the transactions about which Stave now complains.  We affirm.

¶2      We address the following issue on appeal:  Did the District Court err in concluding that Lenora was competent to execute documents which affected the transactions at issue?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      Lenora brought this action in the District Court against her deceased husband Bill's estate, Bill's two adult children, Gerald Rutledge and Cheryl Anderson, and Bill's grandchild, Kelly Rutledge (collectively, "the Rutledges").  The Complaint sought to cancel a quitclaim deed to real property, to cancel the transfer of a vehicle title and to recover funds transferred from a joint bank account.  Several months after the Complaint was filed, Scott Stave, Lenora's son, was appointed as her conservator and substituted as the plaintiff in this action.

¶4      Bill and Lenora were married in 1985 when Bill was 62 and Lenora was 64.  This was the second marriage for Bill and the third for Lenora.  Bill and Lenora each had adult children from their prior marriages.  Gerald Rutledge and Cheryl Anderson are Bill's children from his first marriage.  Kelly Rutledge is Gerald's son and Bill's grandson.  Scott Stave, Jim Stave, Judy Jurenka, Gwen Kane, Ron Sternberg and Marilyn Williamson are Lenora's children from her previous marriages.

2

¶5     Lenora and Bill each had assets at the time they married. After their marriage, Bill sold his farm and the home on it and he and Lenora lived in Lenora's home in Big Sandy. In 1987, Bill bought real property in Lake County. Although there was some evidence that Bill paid for this property entirely from his own funds, the deed was prepared in the names of Bill and Lenora as joint tenants with the right of survivorship.

¶6     During their marriage, Bill and Lenora opened and maintained a number of bank accounts at Wells Fargo Bank in Big Sandy. The accounts were variously opened as "Bill and/or Lenora Rutledge" or "Lenora and/or Bill Rutledge." Diana Webster, a bank employee, testified that the first person named on an account signified who opened the account and who the bank considered the owner as between Bill and Lenora. However, Webster also testified that because they were joint accounts, either party could remove funds from these accounts.

¶7     In the early part of 2001, Bill was diagnosed with malignant cancer. His physicians advised him that he could expect to live for only another six months. After receiving this news, Bill and Lenora began to make known their estate planning desires and to take steps to memorialize their wishes. As part of that process, Bill asked his son Gerald to contact attorney Tom Sheehy to prepare Living Wills and Powers of Attorney for both Bill and Lenora.

¶8     Bill was hospitalized in April 2001. On April 30, 2001, a meeting took place in Bill's hospital room involving Bill, Lenora, Sheehy and some of Bill's and Lenora's children. At this meeting, Bill told the group how he and Lenora would like certain portions of their

property distributed. Bill requested that Sheehy prepare a new deed for the property in Lake County wherein the property would be held by Bill and Lenora as tenants in common with the property 60% in Bill's name and 40% in Lenora's name. Bill also stated that Lenora was to receive Bill's Ford Expedition and Bill's grandson Kelly was to receive Bill's pickup.

¶9 After this meeting, Sheehy prepared a quitclaim deed for the lake property transferring it from Bill and Lenora as joint tenants with the right of survivorship to Bill and Lenora as tenants in common with a 60/40 division of interest. Both Bill and Lenora signed the new deed in Sheehy's presence on May 7, 2001. A few days later, Webster went to the hospital to obtain Bill's and Lenora's signatures to transfer the vehicle titles.

¶10 Bill also had Webster transfer funds from one of their joint bank accounts to an account in his name along with the names of Gerald and Cheryl. Bill passed away on May 10, 2001, and a part of the funds in this account were used to pay the expenses of Bill's last illness and his burial.

¶11 On February 11, 2002, Lenora filed her Complaint in this matter wherein she maintained that she was "mentally infirm" at the time of the April 30, 2001 meeting and incapable of transacting business or entering into agreements. Several months after the Complaint was filed, Lenora's son Scott was appointed as her Conservator and substituted as the plaintiff in this action.

¶12 Following a bench trial, at which the District Court received extensive testimony, the court determined that although Lenora's medical records showed some problems with memory, there was no finding of incompetency in May 2001, when the deed and the titles

4

were executed, and that a finding by the court in July 2002, that a conservator should be appointed for Lenora did not establish her incompetency in May 2001. The court further determined that there was sufficient credible evidence from several witnesses establishing that Lenora understood and appreciated the transactions at issue and that they reflected her wishes. Hence, the court concluded that Scott had not met his burden of proof that Lenora lacked competency to effect the transfers. The court entered judgment in favor of the Rutledges and Scott appealed.

**STANDARD OF REVIEW**

¶13 We review a district court's findings of fact to determine whether those findings are clearly erroneous. *Pankratz Farms, Inc. v. Pankratz*, 2004 MT 180, ¶ 44, 322 Mont. 133, ¶ 44, 95 P.3d 671, ¶ 44 (citing *Hidden Hollow Ranch v. Fields*, 2004 MT 153, ¶ 21, 321 Mont. 505, ¶ 21, 92 P.3d 1185, ¶ 21). A district court's findings are clearly erroneous if substantial credible evidence does not support them, if the trial court has misapprehended the effect of the evidence or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Pankratz*, ¶ 44 (citing *Ray v. Nansel*, 2002 MT 191, ¶ 19, 311 Mont. 135, ¶ 19, 53 P.3d 870, ¶ 19). In determining whether a trial court's findings are supported by substantial credible evidence, this Court views the evidence in the light most favorable to the prevailing party. *DeNiro v. Gasvoda*, 1999 MT 129, ¶ 9, 294 Mont. 478, ¶ 9, 982 P.2d 1002, ¶ 9 (citing *Roberts v. Mission Valley Concrete Industries* (1986), 222 Mont. 268, 271, 721 P.2d 355, 357).

¶14    In addition, we review a district court's conclusions of law for correctness. *Pankratz*, ¶ 44 (citing *Hidden Hollow*, ¶ 21).

## DISCUSSION

¶15    *Did the District Court err in concluding that Lenora was competent to execute documents which affected the transactions at issue?*

¶16    Scott argues on appeal that the totality of the evidence supports a finding that by the time the deed and the vehicle titles were signed, Lenora had lost the ability to reason and to make informed judgments and was thus incapable of understanding the nature of the transactions at issue and to make reasoned decisions concerning them.

¶17    The Rutledges argue, on the other hand, that the District Court's decision is supported by the record, that Scott did not meet his burden of proof to establish that Lenora was incompetent when she signed the deed and the title to the pickup, and that Scott is barred by estoppel from asserting that the deed and the title should be set aside.

¶18    After an extensive review of the record in this case, we hold that there was sufficient credible evidence to support the District Court's determination that Lenora was competent to execute the documents in question. While Lenora's medical records indicate that she had been diagnosed with early Alzheimer's, her medical records also indicate that it was the mildest form of the disease until October or November 2001, six months after Bill's death. Moreover, a conservator was not appointed for Lenora until July 2002, more than a year after Bill's death.

¶19 In *Matter of Estate of West* (1994), 269 Mont. 83, 95, 887 P.2d 222, 229, we noted that the fact that an individual has mental health problems does not *per se* make him or her incompetent. We have also pointed out that even the fact that a conservator has been appointed does not mean that a protected person lacks the capacity to make certain decisions, including executing a will. *West*, 269 Mont. at 95, 887 P.2d at 229; *In re Estate of Prescott*, 2000 MT 200, 300 Mont. 469, 8 P.3d 88; § 72-5-421(5), MCA.

¶20 In this case, there were no findings in any of Lenora's medical records that she was incompetent at the time the deed and the titles were signed. Even though Lenora's physician, Dr. Forrest Lanchbury, testified at trial that Lenora was incompetent, he had Lenora sign an informed consent for a medical procedure only a few days before she signed the deed and the titles. In addition, Dr. Lanchbury testified that the death of a spouse can accelerate dementia.

¶21 "Expert testimony is opinion evidence which the finder of fact is entitled to disregard if it finds the testimony unpersuasive." *Koeppen v. Bolich*, 2003 MT 313, ¶ 51, 318 Mont. 240, ¶ 51, 79 P.3d 1100, ¶ 51 (quoting *Magart v. Schank*, 2000 MT 279, ¶ 10, 302 Mont. 151, ¶ 10, 13 P.3d 390, ¶ 10). As the Rutledges point out in their brief on appeal, Dr. Lanchbury's actions at the time the deed was signed were far more indicative of his view of Lenora's mental state than an opinion created many months later. Had Dr. Lanchbury felt that Lenora was not competent, he would not have solicited and accepted an informed consent from her.

¶22 The District Court heard conflicting testimony regarding Lenora's mental capacity. However, as we have frequently held, the District Court is in the best position to observe and

7

examine the demeanor and candor of the witnesses, judge their credibility, and decide whether the plaintiffs have met their burden of proof, therefore, we will not second guess the District Court's determination regarding the strength and weight of conflicting testimony. *In re Marriage of Mease*, 2004 MT 59, ¶ 50, 320 Mont. 229, ¶ 50, 92 P.3d 1148, ¶ 50 (citing *Double AA Corp. v. Newland & Co.* (1995), 273 Mont. 486, 494, 905 P.2d 138, 142).

¶23 Furthermore, a party asserting incompetence bears the burden of proof on that point. Sections 26-1-401 and 402, MCA; *Koerner v. Northern Pac. Ry. Co.* (1919), 56 Mont. 511, 186 P. 337. We agree with the District Court that Scott failed to meet his burden in that regard.

¶24 Consequently, viewing the evidence in the light most favorable to the prevailing party, the Rutledges, as we are constrained to do, *Deniro*, ¶ 9, we hold that there was sufficient credible evidence to support the District Court's determination and that the District Court did not misapprehend the effect of that evidence.

¶25 Accordingly, we hold that the District Court did not err in concluding that Lenora was competent to execute the documents which affected the transactions at issue.

¶26 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART

/S/ PATRICIA O. COTTER