DA 08-0568

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 344

IN THE MATTER OF THE GUARDIANSHIP
AND CONSERVATORSHIP OF

LUCILLE ANDERSON.

　　　　An Incapacitated Person.

APPEAL FROM:　　District Court of the Ninth Judicial District,
　　　　　　　　In and For the County of Glacier, Cause No. DG 07-02
　　　　　　　　Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Jeffrey G. Winter; Hartelius, Durocher & Winter, P.C.; Great Falls,
　　　　　　Montana

　　　　For Appellee:

　　　　　　Patrick Watt, Warren C. Wenz; Jardine, Stephenson, Blewett & Weaver,
　　　　　　P.C.; Great Falls, Montana (Attorneys for Appellee, Conservator T. Kai
　　　　　　Lee, n/k/a T. Kai Groenke)

　　　　　　Louis C. Villemez; Villemez Law Office, PLLC; Cut Bank, Montana
　　　　　　(Court-appointed Attorney for Lucille Anderson)

　　　　　　Merle J. Raph; Special Deputy Glacier County Attorney; Shelby, Montana

　　　　　　　　　　　　　　　Submitted on Briefs:　June 17, 2009

　　　　　　　　　　　　　　　　　　　Decided:　October 20, 2009

Filed:

　　　　　_____
　　　　　　　　　　　　Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The Ninth Judicial District Court, Glacier County, without notice or hearing, removed Laurie Wilder (Wilder) as a transfer on death (TOD) beneficiary of an investment account upon the request of the conservator for Lucille Anderson, a protected person. Upon learning of the District Court's action, Wilder filed a Rule 60(b)(4) motion for relief from the order. The District Court did not rule on the motion and it was denied by operation of law. Wilder appeals and we affirm.

¶2 We consider the following issue: Did the District Court err by failing to provide notice to Wilder, an assertedly "interested person," and conduct a hearing on the conservator's request to remove Wilder as a TOD beneficiary on the protected person's investment account?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On August 28, 2007, the Montana Department of Public Health and Human Services (DPHHS), Adult Protective Services, received a referral concerning 101-year-old Lucille Anderson (Lucille). The referral alleged undue influence and financial exploitation by Wilder, Lucille's second cousin and caretaker. An investigation by DPHHS revealed questionable financial transactions, and on September 19, 2007, the District Court approved the commencement of guardianship and conservatorship proceedings, appointing DPHHS as temporary guardian and T. Kai Lee (Lee) as temporary conservator for Lucille. The District Court also appointed attorney Louis Villemez (Villemez) to represent Lucille in the guardianship and conservatorship

2

proceedings. On November 7, 2007, the District Court dismissed the guardianship as no longer necessary, but continued the conservatorship, issuing Letters of Conservatorship to Lee.

¶4 The District Court set a hearing for December 5, 2007, to receive an initial accounting of the conservatorship and Lee's conservatorship report. Neither Wilder nor her attorney was provided notice of the hearing. Villemez and Lee were the only persons present at the hearing. Lee presented her report to the District Court, detailing questionable transfers from Lucille's accounts to Wilder and the naming of Wilder as the TOD beneficiary on Lucille's Edward Jones & Co. investment account. The report stated that, in the spring of 2007, Wilder had transported Lucille to an Edwards Jones office to name Wilder as the beneficiary on Lucille's account. The broker related to Lee that Lucille appeared to be under some duress, and that Lucille had expressed concern that Wilder would be upset if she did not designate her as beneficiary on the account.

¶5 Lee and Villemez advised the District Court that Lucille desired to remove Wilder as the TOD beneficiary of her Edward Jones account, but that Edward Jones had asked for a court order to effectuate the change. Both Lee and Villemez requested the District Court issue an order removing Wilder as the TOD beneficiary of the investment account. The District Court was reluctant, asking "isn't it very similar to an issue regarding a will, whether she had the competency to make a declaration by naming Laurie Wilder as a beneficiary, and don't I need to have a hearing on that? . . . I mean, I don't have a problem staying it until we have a hearing." In response, Lee stated:

3

[A]s full Conservator, I have the powers to do exactly what Lucille would have done. I have control over her finances with or without her consent. I don't need to act in any way, as long as I'm acting in her best interests; and the only reason I'm asking for the court order is because Edward Jones requested it. They will not change the transfer on death beneficiary designation without a court order. I don't think you need to make any findings regarding her capacity. It's my understanding, from reading the conservatorship statutes, that I don't even need to ask for permission to change her accounts. I doubt I could change her Will at this point, but I can change her accounts.

¶6 Lee and Villemez persuaded the District Court and, on December 7, 2007, without notice or hearing on that issue, the court entered an order removing Wilder as the TOD beneficiary of Lucille's investment accounts. Lucille died on March 8, 2008.

¶7 On September 2, 2008, Wilder filed a motion under Rule 60(b)(4), M. R. Civ. P., seeking relief from the order, on the ground that the District Court did not provide her notice as an "interested person" or hold a hearing. The motion was not ruled upon within 60 days and was therefore deemed denied. Rule 60(c), M. R. Civ. P. Wilder appeals. Lucille's Conservatorship remains open, pending this appeal.

## STANDARD OF REVIEW

¶8 The standard of review of a district court's ruling on a motion pursuant to M. R. Civ. P. 60(b) depends on the nature of the final judgment, order, or proceeding from which relief is sought and the specific basis of the Rule 60(b) motion. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451 (citing *In re Marriage of Barnes*, 251 Mont. 334, 336, 825 P.2d 201, 203 (1992)). We generally review a district court's ruling for abuse of discretion. *Essex*, ¶ 16; *see Heller v. Gremaux*, 2002 MT 199, ¶ 7, 311 Mont. 178, 53 P.3d 1259; *Hall v. Heckerman*, 2000

4

MT 300, ¶ 12, 302 Mont. 345, 15 P.3d 869. However, where the movant seeks relief under Rule 60(b)(4), on the ground that the judgment is void, we review the district court's ruling de novo, as the determination that a judgment is or is not void is a conclusion of law. *Essex*, ¶ 16 (citing *Export Group v. Reef Indus., Inc.*, 54 F.3d 1466, 1469 (9th Cir. 1995) ("We review de novo . . . a district court's ruling upon a Rule 60(b)(4) motion to set aside a judgment as void, because the question of the validity of a judgment is a legal one.")); *see Hicklin v. CSC Logic, Inc.*, 283 Mont. 298, 301, 940 P.2d 447, 449 (1997).

**DISCUSSION**

¶9 ***Did the District Court err by failing to provide notice to Wilder, an assertedly "interested person," and conduct a hearing on the conservator's request to remove Wilder as a TOD beneficiary on the protected person's investment account?***

¶10 Wilder contends that the District Court erred in removing her as the TOD beneficiary of Lucille's Edward Jones investment account because neither the District Court nor Lucille's conservator possessed the authority to remove her as a TOD beneficiary, and Wilder was not provided notice as an "interested person." We begin with the authority of the conservator and the district court.

¶11 A conservatorship may be established when a person is "unable to manage his property and affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, [or] advanced age," or if property "will be wasted or dissipated unless proper management is provided . . . ." Section 72-5-409(2)(a) and (b), MCA (2005); *In re Estate of Clark*, 237 Mont. 179, 183, 772 P.2d 299, 301 (1989).

¶12    Section 72-5-421(5), MCA, provides that, "[a]n order . . . determining that a basis for appointment of a conservator or other protective order exists, has no effect on the capacity of the protected person." Applying the statute, this Court has held that appointment of a conservator to protect an individual's property does not equate to an adjudication of incompetency. *Stave v. Estate of Rutledge*, 2005 MT 332, ¶ 19, 330 Mont. 28, 127 P.3d 365 ("[T]he fact that a conservator has been appointed does not mean that a protected person lacks the capacity to make certain decisions, including executing a will." (citing *In re Estate of West*, 269 Mont. 83, 95, 887 P.2d 222, 229 (1994); *In re Estate of Prescott*, 2000 MT 200, ¶ 47, 300 Mont. 469, 8 P.3d 88; § 72-5-421(5), MCA)).

¶13    Because the appointment of a conservatorship does not declare that a protected person is incompetent, the protected person may, if otherwise able, make testamentary dispositions, including removing or changing beneficiaries to insurance policies, as well as annuity and investment accounts. *See In re Estate of Oliver*, 934 P.2d 144, 148 (Kan. 1997) (conservatee's changes to payable on death certificates of deposit valid); *Campbell v. Black*, 844 P.2d 759, 762 (Kan. 1993) ("The authority of a conservatee to make testamentary dispositions includes the authority to change POD beneficiaries." (citing *Union Natl. Bank of Wichita v. Mayberry*, 533 P.2d 1303, 1307 (Kan. 1975))).

¶14    During these proceedings, Lucille was not adjudged to be incompetent, and her guardianship proceeding was dismissed. The order appointing a conservator for Lucille did not itself prohibit her from making testamentary dispositions, including changing the TOD beneficiary designation of her Edward Jones account, without a court order, if she

6

was able to do so. It was likewise permissible, as Lee argues, for Lucille to enlist the aid of her attorney in accomplishing this objective. However, when Lucille and her attorney were unable to accomplish the task, they turned for assistance to the Conservator and the District Court, who could act with regard to Lucille's estate only in the manner authorized by statute.

¶15 The conservator is a fiduciary, § 72-5-423, MCA, and her duties and powers are enumerated at § 72-5-427, MCA, et seq. The statutes authorize a conservator to act without court approval in various ways, including collecting, holding and retaining estate assets, receiving additions to the estate, making ordinary or extraordinary repairs to property, or entering into leases. Section 72-5-427(3)(a)-(y), MCA. The conservator "must administer the estate as would the court if administering it directly, that is, for the benefit of the protected person." *Clark*, 237 Mont. at 183, 772 P.2d at 302. However, a conservator's authority is not unlimited. It is circumscribed by the statutory provisions requiring certain transactions on behalf of the protected person, or conservatee, to be approved by the court. Before the District Court, Conservator Lee contended that she had "control over [the conservatee's] finances with or without her consent [and can] change her accounts." As explained below, this assessment was overbroad. Lee did not possess the statutory authority to unilaterally change the TOD beneficiary on Lucille's investment account. Court approval was required.

¶16 District courts are vested with broad management powers over a conservatorship, possessing "all the powers over [the person's] estate and affairs which he could exercise

if present and not under disability, except the power to make a will." Section 72-5-421(3), MCA. More specifically, the statute also provides that "[t]hese powers include *but are not limited to* [the] power to: . . . (g) exercise [the person's] rights to elect options and *change beneficiaries under insurance and annuity policies*." Section 72-5-421(3)(g), MCA (emphasis added). This provision provides examples of the district court's powers in a conservatorship, and by the but "not limited to" language, indicates this list of powers is not exhaustive or limited to those which are expressly enumerated. We see no substantive distinction between changing a beneficiary designation under a conservatee's insurance policy, as enumerated in the statute, and changing a TOD beneficiary under an investment account, such as at issue here. Given the statute's contemplation of additional powers of the district court, and the similar function at issue, the District Court possessed the power to remove or change the beneficiary designation under Lucille's investment account.

¶17 As other courts have explained, intervention by the court is required to change a conservatee's beneficiary designation because the "conservator is not the alter ego of the conservatee and the decision to . . . change a beneficiary is a purely personal elective right of the conservatee." *In re Estate of Briley*, 825 P.2d 1181, 1184 (Kan. 1992) (collecting cases); *Mayberry*, 533 P.2d at 1308 ("the right to change the beneficiary in a life insurance policy owned by the ward remains a personal right of the insured over which the guardian has no power"); *Citizens St. Bank & Trust Co. of Hiawatha v. Nolte*, 601 P.2d 1110, 1114 (Kan. 1979) ("It is not [the conservator's] function, nor that of the

8

probate court supervising the conservatorship, to control disposition of the conservatee's property after death.").

¶18 However, to enter such an order, a district court must follow the statutory procedures which govern the exercise of this power. A district court may "change beneficiaries under insurance and annuity policies, only if satisfied, *after notice and hearing*, that it is in the best interests of the protected person and that [the protected person] either is incapable of consenting or has consented to the proposed exercise of power." Section 72-5-421(4), MCA (emphasis added). The District Court was thus required to hold a hearing and determine whether such a change in the TOD beneficiary was in Lucille's best interest, and whether Lucille was incapable of consenting or had consented to the proposed exercise of power. Section 72-5-422(4), MCA; *see In re Estate of Leone*, 860 P.2d 973, 977 (Utah 1993) ("Thus, under [the statute], the court may change a protected person's life insurance beneficiaries after the court holds a hearing to determine the best interests of the protected person."); *Grahl v. Davis*, 971 S.W.2d 373, 378 (Tenn. 1998) ("[T]he conservator must petition the court, and the court, on behalf of the conservatee, can exercise such an election if it is clearly proven to be in the best interests of the conservatee." (citations omitted)).

¶19 Here, the District Court did not conduct a hearing to determine whether the beneficiary change to Lucille's investment account was in her best interests, and whether she had consented to the change or was incapable of consenting. It may well be, as Lee argues, that the beneficiary change was what Lucille desired, that she was capable of

9

consenting to the change, and that it was in her best interest. However, no evidence was presented, and the District Court entered no factual findings to that effect.[1]

¶20    Whether this error by the District Court requires reversal depends upon whether Appellant Wilder was prejudiced or harmed by it. This leads to her argument that, as a TOD beneficiary, she was an "interested person" who was entitled to notice of a hearing to consider removing her as beneficiary. Because the statute required the District Court to hold a hearing and provide notice to "interested persons," we must determine whether Wilder, as a TOD beneficiary of Lucille's investment account, was an "interested person" as defined under § 72-1-103(25), MCA, who was entitled to notice of the proceeding under §§ 72-1-301, 72-5-403(2), or 72-5-404, MCA, the probate and conservatorship notice provisions.

¶21    By these statutes, notice must be given to any "interested person" of a hearing regarding the protected person, as well as to any "interested person" who has specifically requested notice. Sections 72-1-301[2], 72-5-403(2)[3], and 72-5-404[4], MCA. In turn,

---

[1] Although a "hearing" was held in which Lee and Villemez conferred with the court, it was not an evidentiary hearing necessary to establish the court's authority to act for this purpose.

[2] Section 72-1-301(1), MCA, provides that "notice of a hearing on any petition is required and [shall] be given to any *interested person* or his attorney if he has appeared by attorney or requested that notice be sent to his attorney." (Emphasis added.)

[3] Regarding notice during conservatorship proceedings, § 72-5-403(2), MCA, provides that "[n]otice . . . of any subsequent hearing must be given to any person who has filed a request for notice under 72-5-404 *and to interested persons and other persons as the court may direct*." (Emphasis added.)

[4] The conservatorship statutes further provide an additional notice provision at § 72-5-404(1), MCA, permitting "[a]ny interested person who desires to be notified before any order is made in a protective proceeding [to] file with the clerk a request for notice . . . ."

"interested person" is defined by § 72-1-103(25), MCA, to include "heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against a trust estate or the estate of a decedent, ward, or protected person."

¶22 We previously interpreted this statutory definition of "interested person" in *In re Estate of Miles v. Miles*, 2000 MT 41, 298 Mont. 312, 994 P.2d 1139. We concluded that "the correct interpretation of the statute is that heirs, devisees, children, spouses, creditors, beneficiaries, and any others, *each have to have a property right in* or claim against the estate to be considered 'interested persons.'" *Miles*, ¶ 46 (emphasis added). In *Miles*, the decedent's children, denominated "Heirs," were entitled to half of all insurance proceeds by virtue of a provision in the decedent's will. The decedent also owned an annuity contract which terminated on the decedent's death and paid out any remaining funds to his estate. Upon the decedent's death, the Heirs claimed they were likewise entitled to half of the annuity contract, given its similarity to insurance proceeds. After concluding that an annuity contract could not be considered insurance proceeds for this purpose, we further concluded that the Heirs had "no property right in or claim against the estate, thus they [were] not interested persons" under § 72-1-103(25), MCA, and accordingly had no standing to challenge the estate's administration. *Miles*, ¶¶ 8-14, 41-46. In so holding, we *rejected* the Heirs' assertion that the statutory language—"and any others having a property right [] or claim"—meant that the others listed in the statutory definition of "interested person," such as "devisees, children, spouses, creditors

11

and beneficiaries," did not need to have a property right in order to be an "interested person" under the statute. *Miles*, ¶ 44-46.

¶23 *Miles* thus makes clear that the beneficiary must have "a property right in or claim against" the estate to qualify as an "interested person." As we have previously explained, an "on death" designation in either POD or TOD form does not create a present property right or interest in the designated beneficiary until the account owner is deceased:

> A P.O.D. designation provides that the beneficiary receives an interest in the CD *only at the death of the depositor*. See Official Comments to §§ 72-6-211 and 213, MCA, Annotations. The P.O.D. certificate of deposit is akin to an insurance policy – the proceeds cannot be claimed by the beneficiary until death. At any time before the depositor's death, the depositor can change the beneficiary or withdraw the account and use the funds. However, the P.O.D. beneficiary has no such right. See Official Comments to §§ 72-6-211 and 213, MCA, Annotations. Therefore, a P.O.D. designation does *not* entitle the beneficiary to a *present* interest in the CDs . . . .

*In re Estate of Lahren*, 268 Mont. 284, 288, 886 P.2d 412, 414 (1994) (emphasis in original). Section 72-6-306, MCA, provides that "[t]he designation of a TOD beneficiary on a registration in beneficiary form *has no effect on ownership until the owner's death*." (Emphasis added.) A beneficiary designation "may be canceled or changed at any time" by the owner. Section 72-6-306, MCA. The California Supreme Court has explained that "[t]he interest of a beneficiary designated by an insured who has the right to change the beneficiary is, like that of a legatee under a will, a mere expectancy of a gift at the time of the insured's death." *Grimm v. Grimm*, 157 P.2d 841, 842-43 (Cal. 1945) (citations omitted); *see Feely v. Lacey*, 133 Mont. 283, 297, 322 P.2d 1104, 1111 (1958)

12

(where the owner has the right to change the beneficiary, the beneficiary has a mere expectancy).

¶24 The statute at issue here may be contrasted with § 72-1-103(3)(a), MCA, wherein the Legislature provided that a *trust beneficiary* includes those who have "any present or future interest, vested or contingent." The Legislature thus accorded "interested person" status to beneficiaries of a trust who only possess a future or contingent interest, or those whose rights have not yet vested. *See also Mayer v. M.S. Bailey & Son*, 555 S.E.2d 406, 409 (S.C. 2001) (interpreting the Probate Code to afford "contingent remaindermen standing to pursue actions involving 'alleged misconduct of a fiduciary, in connection with the creation, administration and depletion of trusts,'" (citations omitted)). The Legislature did not accord such status to beneficiaries of a POD or TOD account which is not part of a trust.

¶25 Thus, Wilder did not qualify as an "interested person" under § 72-1-103(25), MCA, for purposes of a conservatorship hearing, because she did not possess a present property right or interest in Lucille's investment account while Lucille was alive, in accord with *Miles*. Neither did she have a "claim" against Lucille's estate, as she had no present interest to protect. Wilder would have qualified as an "interested person" under § 72-1-103(25), MCA, as a beneficiary of Lucille's TOD investment account only if she had possessed a present property right or interest in the account. Because Wilder had no present property right or interest when Lee sought the District Court's order to change the

13

beneficiary designation on Lucille's investment account, Wilder was not an "interested person" entitled to notice.

¶26 Just as Wilder would have had no standing to be heard or to present objections to her removal as beneficiary if Lucille had changed the investment account on her own, neither did Wilder have standing to object to Lucille's conservator's request that the District Court order the beneficiary change while Lucille was alive. *Miles*, ¶¶ 45-47 (because the Heirs had no property right in or claim against the estate, the Heirs were not "interested persons" and therefore had "no standing"). Wilder had no property interest, had no claim, was not an "interested person" under the statute, and was not entitled to notice of the December 5, 2007 hearing. Although Wilder makes a very brief due process argument, her authorities fail to support her argument because she has established no property interest mandating constitutional protection. Lucille could have removed Wilder as the account TOD beneficiary at any time, without notice, and so could the conservator, upon the court's approval after a hearing. Thus, Wilder has no standing to challenge the failure to conduct a proper hearing or to receive notice, and has not established reversible error.

¶27 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS

14