OPINION OF THE COURT
Edward M. Horey, S.
The principal issue raised on the accounting in the estate in issue concerns a savings bank account.
It is the contention of the objectants that the account at issue was merely a convenience account and as a consequence the proceeds should be considered assets of the estate and distributed under the terms of the decedent’s will.
*690 The executor takes a contrary position and insists that the account was a true joint account payable to the survivor by operation of law and not an estate asset distributable under the decedent’s will.
In resolving the issue the court is aided by the provision of Banking Law § 675. That statute provides as follows:
"(a) When a deposit of cash * * * has been made or shall hereafter be made in or with any banking organization * * * in the name of such depositor * * * and another person and in form to be paid or delivered to either, or the survivor of them, such deposit * * * and any additions thereto made, by either of such persons, after the making thereof, shall become the property of such persons as joint tenants, and the same, together with all additions and accruals thereon, shall be held for the exclusive use of the persons so named, and may be paid or delivered to either during the lifetime of both or to the survivor after the death of one of them, and such payment or delivery and the receipt or acquittance of the one to whom such payment or delivery is made, shall be a valid and sufficient release and discharge to the banking organization * * * for all payments or deliveries made on account of such deposit * * * receipt by the banking organization * * * notice in writing signed by any one of such joint tenants, not to pay *1* H* #
"(b) The making of such deposit * * * in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding to which the banking organization * * * surviving depositor or shareholder is a party, of the intention of both depositors * * * to create a joint tenancy and to vest title to such deposit * * * and additions and accruals thereon, in such survivor. The burden of proof in refuting such prima facie evidence is upon the party or parties challenging the title of the survivor.” (Emphasis added.)
The evidence concerning this account is that it was the proceeds of Buffalo Savings Bank account No. 05-87991. At the time this account was closed at the Buffalo Savings Bank, the balance was $32,520.85. That was the precise sum in which Goldome account CD No. 805-008364-1 was initially opened.
What is significant about this account is that in the Buffalo Savings Bank this account was entitled "Lela T. Fuss or James Fuss” and was stamped as part of the entitlement "as joint tenant payable to either or survivor.”
Clearly this account met the requirements of Banking Law *691 § 675 while it existed at the Buffalo Savings Bank. If it had remained there it would undoubtedly have been payable to James Fuss as the surviving joint tenant. The court holds that this account while at the Buffalo Savings Bank was a true joint account with the right of survivorship to the surviving joint tenant.
Did the withdrawal of that true joint account by the decedent and the subsequent deposit of the proceeds in the account at the Goldome Bank without the qualifying language of Banking Law § 675 destroy the survivorship aspect of that account? That is the question presented. This court’s research indicates it is a novel one.
The court is aided in determining that issue by the decision of our Court of Appeals in Matter of Bricker v Krimer (13 NY2d 22 [1963, Dye, J.]). There the court held in relevant part as follows: "As to any moneys withdrawn from such an account during the joint lives of the two named persons, there is still, after the death of either of them, the presumption that the moneys so withdrawn by one had in fact belonged to both (Moskowitz v. Marrow, 251 N. Y. 380, 397; Marrow v. Moskowitz, 255 N. Y. 219) and this is so whether an account payable to either or the survivor is opened by the depositor in his name and that of his wife, or some one other than his wife (Moskowitz v. Marrow, 251 N. Y. 380, 397, supra; Russo v. Russo, 17 A D 2d 129; see, also, 1959 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1959, No. 65 (J)]; cf. Matter of Polizzo, 308 N. Y. 517, and cases there cited involving personal property other than bank accounts in statutory form). In other words, the withdrawal of moneys from the joint account does not destroy the joint tenancy, if one was created. It merely opens the door to competent evidence, if available, that no joint tenancy was intended to be created (Matter of Porianda, supra).” (Supra, at 27; emphasis added.)
Again, as is repetitively the case of Surrogate Judges, this court imitates the legendary Knights Lochinvar, Percival and Ord and sallies forth in quest of a goal both elusive and veiled —theirs the Holy Grail — ours testamentary intent.
In the instant case this court reaches the conclusion that in establishing the account at the Goldome Bank the decedent intended that no joint tenancy with the right of survivorship would be created and that the survivorship aspects of the predecessor joint account at the Buffalo Savings Bank would be terminated.
*692 This conclusion is supported by the fact that the decedent was well aware of the consequences and legal effect of a true joint account. She was the surviving joint tenant to accounts upon the death of her husband and received the proceeds of those accounts directly by operation of law. In sum, the decedent knew that a true joint account would not be available for distribution by her executor.
Most importantly to this court is the language used by the decedent in paragraph Sixth of her will. There it was provided: "sixth: All the money and government bonds are to be divided equally between my three sons, Thomas, James & Edward down to a penny.”
Since the only money that the decedent left for distribution in her estate was a paltry $725 in a checking account in her name, it is patently obvious to this court that her direction for equal distribution of her money down to the penny must have meant the money she deposited in the several accounts with her sons. These accounts totaled in the aggregate $169,438.34 and represented 74% of her entire estate.
The view taken by the court is corroborated by the testimony of the witness Cindy King, the decedent’s granddaughter, whose answer to the question: "Q. And did she [decedent] indicate to you how that money was to be divided between the three boys?” was "A. Equal, right down to the last penny.”
The testimony of the witness, Mary Blood, was to the same effect. It included the following statement: "She [decedent] had several accounts like that with each of the boys’ names on them, the boys all knew that and if anything happened to her, they were to be divided equally and she trusted Jim to do what was right.”
Further indication of the decedent’s intention is found in the fact that all moneys in Goldome account CD No. 805-008364-1 were the moneys of the decedent. This was equally true as to the other five accounts. The decedent never withdrew money from the accounts preserving them intact for the benefit of her sons.
Finally, the evidence is clear that in her largesse the decedent was obsessed with the laudatory quality of treating all relatives equally. When she made a gift to one grandchild which was more expensive than a gift to another, she compensated by attaching the difference in cash by scotch tape to an accompanying card. On one occasion when the decedent made *693 a gift to her son James of a truck worth $4,000, she made compensatory gifts to her sons Edward and Thomas.
The court holds that such evidence is sufficiently persuasive to conclude, as this court does, that the decedent intended account CD No. 805-008364-1 to be a convenience account and as such an asset for the estate available for distribution to her three sons equally.
In so holding this court is aware of the testimony that the decedent had stated that she placed moneys in the accounts so that the lawyer would not get any of it. From this the petitioner argues that such statement evidences an intent on the part of decedent to create true joint accounts with the aspect of survivorship removing the proceeds from estate assets and possibly increased attorney’s fees. While there is concededly some merit to this argument, the opinion of the court is that such statements merely evidence an intent to avoid legal expense but not an intent to favor her children disproportionately in contradiction of her clear unequivocal, written and oral statements of intention that they should share her moneys equally.