(283 P.3d 219)

No. 106,622

DOUGLAS M. REICHERTER and CAROLYN S. REICHERTER, Husband and Wife, Individually and as Trustees of the DOUGLAS M. REICHERTER and CAROLYN S. REICHERTER TRUST under date of January 3, 2007, *Appellants*, v. BARBARA J. MCCAULEY, Executor of the Estate of RICHARD F. REICHERTER, Deceased, *Appellee*.

Opinion filed July 13, 2012.

*Dennis A. White*, of White Law Office, of Holton, for appellants.

*Michael M. Jackson*, of Michael M. Jackson Law Firm, of Topeka, for appellee.

Before MARQUARDT, P.J., HILL, J., and LARSON, S.J.

HILL, J.: In this appeal, we must decide if one joint tenant, 10 days before his death, can effectively destroy a joint tenancy interest in a tract of real estate and replace it with a tenancy in common tenant by signing a quitclaim deed to himself and giving it to his lawyer for recording. Guided by the clearly manifested intent of the party making the conveyance here and because jointly owned property is freely transferable, we hold that the transfer of title was effective upon delivery of the deed to the grantor's lawyer for recording. We affirm the district court's ruling.

*Two cousins jointly owned 80 acres.*

Richard F. Reicherter and his cousin, Douglas M. Reicherter, acquired an 80-acre farm in Marshall County in 1990, as joint tenants with rights of survivorship. Years later, when Richard was residing in a care facility, he signed a quitclaim deed on December 18, 2009, that conveyed his interest in the 80 acres to himself in an apparent attempt to sever the joint tenancy and create a tenancy in common. After signing, Richard gave the deed to his attorney, Rodney Symmonds, for recording. On December 22, 2009, Symmonds mailed Richard's quitclaim deed along with a filing fee to the Marshall County Register of Deeds.

Then, Richard died on December 28, 2009. One day after his death, the Marshall County Register of Deeds recorded Richard's quitclaim deed. Douglas Reicherter was unaware that Richard had executed and filed a quitclaim deed until after Richard's death. There was no express agreement between Richard and Douglas preventing Richard from severing the joint tenancy.

Barbara J. McCauley was appointed executrix of Richard's estate. Naming McCauley as the defendant, Douglas and his wife filed a quiet title action in Marshall County seeking title to the entire 80-acre tract. McCauley counterclaimed claiming a half ownership interest and sought partition of the farm. Douglas opposed this action.

Both sides sought summary judgment. Ruling that Richard clearly intended to sever the joint tenancy and he could convey his interest to himself unimpeded and could thus create a tenancy in

common, the district court granted Executrix McCauley's motion and denied Douglas' motion for summary judgment. The district court also held that the joint tenancy was severed when Richard, prior to his death, delivered the quitclaim deed to his attorney for filing. Later, the district court clarified that during the summary judgment hearing Douglas waived any argument that there was an oral agreement in which Douglas gave consideration for the joint tenancy to Richard in exchange for the same benefits and burdens from the land upon Richard's death.

## The issue

Douglas Reicherter contends the unilateral attempt at self-conveyance by Richard was ineffective in destroying the joint tenancy ownership they had in the 80 acres. In Douglas' view, since the deed was not recorded until after Richard's death, it did not affect his surviving ownership of the entire tract as he had no prior notice of Richard's intent to sever the joint tenancy. He asks us to reverse the district court and order the court to quiet title to the 80 acres in his favor.

Executrix McCauley contends the joint tenancy to the tract was effectively severed and a tenancy in common was created when Richard signed the quitclaim deed to himself and then gave it to his lawyer for recording. In her view, Richard was not required to give notice to Douglas of his intent and recording the deed after Richard's death did not nullify Richard's intent of severing the joint tenancy. She asks us to affirm the district court.

## Our rules of review

We are in the same position as the district court in deciding this case. Our rules concerning summary judgment are well established. When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come

forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Osterhaus v. Toth,* 291 Kan. 759, 768, 249 P.3d 888 (2011).

Because the material facts in this case are not in dispute, resolution of this appeal requires a review of the district court's legal conclusions. An appellate court's review of conclusions of law is unlimited. See *Nicholas v. Nicholas,* 277 Kan. 171, 177, 83 P.3d 214 (2004). Said in another way, where there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Kuxhausen v. Tillman Partners,* 291 Kan. 314, 318, 241 P.3d 75 (2010).

*Joint ownership of property in Kansas*

Generally speaking, there are two ways to jointly own property in Kansas, either as tenants in common or as joint tenants with rights of survivorship. When considering the ownership of real estate, the law presumes a tenancy in common is created unless the deed or other conveyance creating the estate unequivocally conveys a joint tenancy to two or more persons or entities. K.S.A. 58-501. There is no question here that before Richard's death, he and Douglas owned this 80-acre farm as joint tenants.

Before this appeal, it has been argued in other cases that a joint tenant could not unilaterally change ownership of property because of the joint tenancy. But that argument has been rejected by a panel of this court in *Campbell v. Black,* 17 Kan. App. 2d 799, 804, 844 P.2d 759 (1993). In a case where just prior to her death a woman changed the ownership of some joint tenancy accounts, the *Campbell* court held: "[A] joint tenancy may be terminated (1) by mutual agreement of the parties, (2) by course of conduct indicating tenancy in common, or (3) by operation of law upon destruction of one or more of the required unities (time, title, interest, and possession). [Citation omitted.]" 17 Kan. App. 2d at 804. This language was quoted with apparent approval by the Supreme Court

in *Nicholas v. Nicholas*, 277 Kan. 171, 186, 83 P.3d 214 (2004), where the court said: "This approach is consistent with the modern trend of looking to the parties' intent as the operative test of whether a joint tenancy has been severed rather than depending upon the traditional doctrine of the four unities."

We have no doubt that Richard intended to sever the joint tenancy. At the summary judgment hearing, Douglas stipulated that the district court would not have to make a determination regarding Richard's intent because Richard demonstrated a clear intent to sever the joint tenancy by signing the quitclaim deed and giving it to his lawyer. Given that Richard's intent is not at issue, the remaining questions are whether self-conveyance is effective in Kansas and whether Richard's delivery of the quitclaim deed to his attorney effectively severed the joint tenancy or whether the failure to record the deed until after Richard's death thwarted Richard's intent.

*We address the question of self-conveyance.*

No Kansas court has ruled on the issue of whether one joint tenant can unilaterally sever a joint tenancy by executing a quitclaim deed conveying his or her interest in the real estate to himself or herself as a tenant in common. For the three reasons given below, we hold that a joint tenant can self-convey and thus destroy a joint tenancy in this case where there are just two joint tenants.

*First,* under Kansas law, it is clear that any joint tenant may unilaterally sever his or her joint tenancy interest in real property and create a tenancy in common by conveying his or her interest to a third person. *Hall v. Hamilton*, 233 Kan. 880, 885, 667 P.2d 350 (1983). Had Richard conveyed his interests in this real estate to a third person the joint tenancy would have been changed to a tenancy in common with ownership of the tract held in common between that third party and Douglas upon delivery of the deed. We point this out to emphasize that whatever interest a joint owner has in real estate it is freely transferable, that is, it can be sold or given to someone else. There is no need for the party seeking transfer of ownership to first give notice to, or obtain the consent of, the remaining tenant to effectuate the conveyance.

*Second,* where the intent to create a joint tenancy is clearly manifested, a joint tenancy may be *created* by a transfer to persons as joint tenants from an owner or a joint owner *to himself or herself* and one or more persons as joint tenants. The Supreme Court ruled that a self-conveyance can create a joint tenancy. The all important factor is the clarity with which the grantor's intent is expressed at the time the transaction is initiated. *Winsor v. Powell,* 209 Kan. 292, 299, 497 P.2d 292 (1972). Then, in *In re Estate of Lasater,* 30 Kan. App. 2d 1021, 1023-25, 54 P.3d 511 (2002), this court noted that a decedent's quitclaim deed created a joint tenancy. Logically, we see no reason for a distinction between the method used to create or sever a joint tenancy. Just as a grantor can create a joint tenancy by unilaterally transferring ownership to himself or herself, so should a grantor be able to sever a joint tenancy through self-conveyance.

*Third,* other jurisdictions have found that unilateral self-conveyance severs a joint tenancy and have dispensed with the old requirements of deeding property to a straw man. We find their reasoning persuasive. See *Riddle v. Harmon,* 102 Cal. App. 3d 524, 162 Cal. Rptr. 530 (1980); *Countrywide Funding Corp. v. Palmer,* 589 So. 2d 994 (Fla. Dist. App. 1991); *Minonk State Bk. v. Grassman,* 103 Ill. App. 3d 1106, 432 N.E.2d 386 (1982); *Hendrickson v. Minneapolis Fed. Sav. & Loan Assn.,* 281 Minn. 462, 161 N.W.2d 688 (1968); *In re Knickerbocker,* 912 P.2d 969 (Utah 1996); see *In Re Estate of Johnson,* 739 N.W.2d 493 (Iowa 2007); *Taylor v. Canterbury,* 92 P.3d 961 (Colo. 2004); *Johnson v. MacIntyre,* 356 Md. 471, 740 A.2d 599 (1999); *Matter of Fuss,* 151 Misc. 2d 689, 573 N.Y.S.2d 586 Sur. Ct. (1991).

This reasoning leads us to rule in favor of Richard's estate. Upon effective delivery during the grantor's life, a quitclaim deed by a joint tenant to himself or herself as a tenant in common effectively severs the joint tenancy and creates a tenancy in common. Obviously, because of the facts of this case, we limit this ruling to a case where there are just two joint tenants.

*We consider the effect of the recording statute.*

Douglas hangs his hat on one of the recording statutes. He ar-

gues that under K.S.A. 58-2223, the execution of the quitclaim deed creating the tenancy in common was not effective until December 29, 2009, the date filing in Marshall County. We are not convinced that the recording statute can be used to thwart Richard's clear intent to sever the joint tenancy.

Douglas' argument ignores well-settled law in Kansas that title to real estate vests at the time of delivery of the deed. To transfer title through a deed, the grantor must cause the deed to be effectively delivered during the grantor's life. *Agrelius v. Mohesky*, 208 Kan. 790, 795, 494 P.2d 1095 (1972). Recording is not necessary to effectively deliver a deed. See *Libel v. Corcoran*, 203 Kan. 181, 185, 452 P.2d 832 (1969). When a deed that is duly executed and acknowledged is found in a third-party's possession, it is presumed that the grantor delivered the deed. *Cole v. Hoefflin*, 187 Kan. 66, 69, 354 P.2d 362 (1960). Conversely, the law presumes the grantor did not effectively deliver the deed when a deed is signed and acknowledged but the grantor retains control of the deed. See *Cole*, 187 Kan. at 69, 72-73; *Johannes v. Idol*, 39 Kan. App. 2d 595, 604, 181 P.3d 574 (2008). Here, Richard signed the deed and gave it to his attorney for filing. We see no other steps that Richard needed to take to effectively deliver the deed.

A brief review of the recording statutes is helpful at this point. K.S.A. 58-2221 provides: "Every instrument in writing that conveys: (a) Real estate; . . . (d) . . . may be recorded in the office of register of deeds of the county in which such real estate is situated." Then, K.S.A. 58-2222 establishes that every instrument recorded shall "impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice." In turn, K.S.A. 58-2223, the statute relied upon by Douglas, states: "No such instrument in writing shall be valid, *except between the parties thereto*, and such as have actual notice thereof, until the same shall be deposited with the register of deed for record." (Emphasis added.)

Obviously, these recording statutes should be construed together as statutes *in pari materia. Luthi v. Evans*, 223 Kan. 622, 629, 576 P.2d 1064 (1978). The *Luthi* court concluded the legislature intended that the purpose of recording instruments of con-

veyance was to impart constructive notice to subsequent purchasers or mortgagees. 223 Kan. at 629. This is why the exception in K.S.A. 58-2223 is important. Clearly, according to this law, unrecorded deeds are effective for the parties to the deed.

Here, as the only party to the deed, the recording statute did not bar the conveyance of Richard's interest as a joint tenant in the 80 acres to himself as tenant in common upon delivery of the deed to his attorney. Since the deed was effective upon delivery, then the joint tenancy was severed by his actions. Thus, the district court's ruling on this point is correct. Richard had, indeed, severed the joint tenancy several days before his death.

We affirm the ruling of the district court in favor of the estate.