(357 P.3d 294)
No. 113,148

CHARLES J. SHEILS AND SHERYL A. SHEILS REVOCABLE TRUST DATED DECEMBER 6, 2012, *Appellee*, v. KEVIN WRIGHT and NITTAYA WRIGHT, *Appellants*.

Opinion filed August 14, 2015.

*John R. Hamilton* and *David A. Brock*, of Hamilton, Laughlin, Barker, Johnson & Jones, of Topeka, for appellants.

*Gaye B. Tibbets*, of Hite, Fanning & Honeyman, LLP, of Wichita, for appellee.

Before MALONE, C.J., LEBEN, J., and HEBERT, S.J.

LEBEN, J.: Kevin Wright appeals the district court's ruling that invalidated a transfer his uncle, Richard Sheils, made of an ownership interest in Richard's home. Shortly before Richard's death, he transferred his home to himself and Kevin as joint tenants with rights of survivorship. But when Richard died, his brother, Charles Sheils, claimed the property because Richard had previously signed a deed that would transfer the property to Charles upon Richard's death.

The district court held that because Richard had not revoked the transfer-on-death deed, the property became Charles' on Ri-

chard's death. But the Kansas statutes on transfer-on-death deeds provide that the recipient of property from such a deed takes the property "subject to all conveyances . . . made by the record owner . . . during [his] lifetime." K.S.A. 59-3504(b). So Richard was free to transfer the property during his lifetime, and the joint transfer to himself and Kevin—with rights of survivorship—was therefore valid. The district court erred by ruling that the property became Charles' upon Richard's death.

### FACTUAL AND PROCEDURAL BACKGROUND

Richard signed a transfer-on-death deed to his house in 2010, providing that the house would become Charles' upon Richard's death. That deed was properly recorded in 2010.

Three years later, on July 12, 2013, Richard signed a quitclaim deed for the same property, transferring the property to himself and his nephew Kevin as joint tenants with the right of survivorship—a type of ownership in which the property passes to the surviving tenants when one tenant dies. The quitclaim deed wasn't recorded before Richard's death but was delivered to Richard's attorney, Chris Montgomery. Montgomery said after Richard's death that Richard had given him the quitclaim deed with instructions to record it with the register of deeds.

Richard died on September 6, 2013, and the quitclaim deed was recorded on September 20, 2013.

In March 2014, Charles and his wife, Sheryl, filed suit claiming title to the house. (They claimed title on behalf of a personal trust in which they held various assets.) They sued both Kevin and his wife, Nittaya; although the wives were not involved in the deeds, they were presumably included in the suit to resolve any potential interest they might have in the property. Kevin filed a counterclaim claiming he owned the property.

Both sides filed motions for summary judgment, and the district court ruled in Charles' favor. The court said that Richard had not revoked the transfer-on-death deed or recorded the quitclaim deed before his death. Based on those findings, the court held that Charles took the property under the transfer-on-death deed.

Kevin has appealed to this court.

## ANALYSIS

A person may use one or more of several legal mechanisms to transfer property to an intended recipient upon the owner's death. Some use wills and trusts. Others use simpler methods, like the transfer-on-death deed or joint tenancy with rights of survivorship for real property. For personal property, similar methods include the transfer-on-death registration for vehicles or the payable-on-death designation for financial accounts. When a person uses more than one method—with conflicting directions—for the same piece of property, the matter often gets resolved in court. And so it is for Richard's home.

Either of the methods Richard used could have effectively transferred his home. Had only the transfer-on-death deed existed, the property would have transferred to Charles on Richard's death. Similarly, had there been only the deed transferring ownership jointly to Richard and Kevin with rights of survivorship, the property would have transferred to Kevin's sole ownership on Richard's death.

Charles asserts that he took ownership under the transfer-on-death deed, so let's begin by considering what that deed could have transferred here. The district court correctly ruled that the transfer-on-death deed had not been revoked. This is so even though Richard put a provision into the quitclaim deed saying that it revoked the transfer-on-death deed. Transfer-on-death deeds are authorized by statute, and they may be created—or terminated—only as provided by statute. The revocation of a transfer-on-death deed requires that the revocation be recorded with the register of deeds during the owner's lifetime. K.S.A. 59-3503(a). Since that wasn't done (the quitclaim deed wasn't recorded until after Richard's death), the transfer-on-death deed remained in effect at Richard's death.

But this doesn't answer the question that ultimately decides our case: Did any property remain to be transferred under the transfer-on-death deed at the time of Richard's death? If Richard retained the power to transfer the property out of his own ownership during his lifetime, then there might be nothing left to transfer to Charles at Richard's death.

This question is answered by statute too. K.S.A. 59-3504(b) provides that those receiving property through a transfer-on-death deed, called "grantee beneficiaries," take their interest *subject to all conveyances* the owner may yet make during his or her lifetime:

"Grantee beneficiaries of a transfer-on-death deed take the record owner's interest in the real estate at death *subject to all conveyances*, assignments, contracts, mortgages, liens and security pledges *made by the record owner* or to which the record owner was subject *during the record owner's lifetime* including, but not limited to, any executory contract of sale, option to purchase, lease, license, easement, mortgage, deed of trust or lien, claims of the state of Kansas for medical assistance . . . , and to any interest conveyed by the record owner that is less than all of the record owner's interest in the property." (Emphasis added.) K.S.A. 59-3504(b).

So whatever Charles was to receive through the transfer-on-death deed could be diminished by Richard during his lifetime.

And that's just what Richard did—he conveyed the entire interest in the property to himself and Kevin as joint tenants with rights of survivorship. In a joint tenancy, the remaining joint tenant becomes owner of the full property interest upon the other's death. Since Richard conveyed *all* of the property away during Richard's lifetime, there was nothing to transfer on his death via the transfer-on-death deed.

The district court also noted that the quitclaim deed transferring the property to joint-tenancy ownership between Richard and Kevin wasn't recorded. But the lack of recording does not make that deed ineffective. As our court held in *Reicherter v. McCauley*, 47 Kan. App. 2d 968, 974, 283 P.3d 219 (2012), a deed transfers title when it is effectively delivered during the grantor's life. In *Reicherter*, as in our case, the grantor delivered the signed deed to his attorney for recording. That made the deed effective between its parties—Richard and Kevin—even though it wasn't recorded.

An unrecorded deed isn't effective with respect to someone who takes action (like granting a mortgage or purchasing the property) *after* the unrecorded transfer without knowledge of it. See *Reicherter*, 47 Kan. App. 2d at 974-75. But that rule does not apply to Charles, who took no action here—he was merely the beneficiary

of an act undertaken by Richard. Charles certainly took no action after the signing and delivery of the quitclaim deed; he simply remained as the beneficiary of the transfer-on-death deed. That status did not entitle him to any notice of the quitclaim deed. The transfer-on-death-deed statutes do not require notice to the beneficiary when the grantor revokes the transfer-on-death deed altogether. K.S.A. 59-3503(a), (b). In addition, K.S.A. 59-3501(b) provides that "notice to a grantee beneficiary of a transfer-on-death deed shall not be required *for any purpose* during the lifetime of the record owner." (Emphasis added.) For these reasons, the failure to record this quitclaim deed did not make it ineffective.

The district court erred when it granted summary judgment to Charles and denied summary judgment to Kevin. The district court's judgment is reversed, and we remand with directions to grant Kevin's motion for summary judgment.