No. 128,581

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CARROL CLARK,
*Appellant*,

v.

NORMAN D. MCKEE, et al.,
*Appellees*.

SYLLABUS BY THE COURT

1.

Real estate in Kansas may be owned jointly either as tenants in common or as joint tenants with rights of survivorship. That means two or more persons or entities have equal rights to possess the whole property. A joint tenancy differs because it includes a right of survivorship.

2.

Joint tenants may sever their joint tenancy interest in real property without notice to or consent from any other joint tenant. A terminated joint tenancy becomes a tenancy in common.

3.

To decide if a joint tenancy has been terminated, Kansas courts may consider several factors: a mutual agreement of the parties that demonstrates a tenancy in common; whether there has been a course of conduct that shows a tenancy in common; and whether a severance of a joint tenancy has occurred by operation of law that destroys one or more of the four unities of time, title, interest, and possession.

1

4.

No longer relying strictly on the doctrine of the four unities, Kansas courts consider primarily a tenant's intent, coupled with any effective action taken by the tenant, when deciding whether a joint tenancy has been severed.

Appeal from Jefferson District Court; CHRISTOPHER ETZEL, judge. Submitted without oral argument. Opinion filed May 8, 2026. Affirmed.

*Michael Jilka*, of Graves & Jilka, P.C., of Lawrence, for appellant.

*Quentin M. Templeton* and *Brennan P. Fagan*, of Fagan & Emert, LLC, of Lawrence, for appellees.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

BOLTON FLEMING, J.:  In this appeal, we are called upon to determine the ownership interests of a 40-acre farm in Jefferson County, Kansas. Our analysis requires us to consider whether an intent to terminate a joint tenancy, coupled with effective action, operates to terminate the tenancy.

Carrol Clark and Norman McKee owned real estate as joint tenants with rights of survivorship. Despite the joint tenancy, McKee entered a contract with two other parties to sell the entire tract of land without Clark's knowledge or consent. After McKee died and Clark learned of the contract, Clark filed a petition to quiet title. The district court found McKee severed the joint tenancy by his actions which demonstrated his intent to sever. The court found that the termination of the joint tenancy converted the property's ownership to a tenancy in common.

We find that the district court did not err in its determination of the ownership of the property. The facts are not in dispute, and the district court correctly found that

McKee's actions in trying to sell the property, as well as other evidence of his intent to divest himself of the property, were indicative of his intent to terminate the joint tenancy. Whether McKee's contract to sell the entire property was legal or enforceable is irrelevant to this consideration because performance under the contract was not necessary to sever the joint tenancy. Moreover, the district court correctly concluded that the termination of the joint tenancy resulted in a tenancy in common. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Adalee Moffitt owned a 40-acre farm in Jefferson County, Kansas. In 2011, Moffitt recorded a joint tenancy warranty deed for the land with the Jefferson County Register of Deeds. The deed created a joint tenancy with rights of survivorship between Moffitt, Carrol Clark, and Norman McKee. Clark was Moffitt's son, and McKee was her significant other.

On November 30, 2017, Moffit and McKee borrowed $113,800 from Quicken Loans, Inc. (now Rocket Mortgage), and Moffitt, McKee, and Clark executed a mortgage instrument on the jointly held real estate to secure the loan. On the same day, McKee paid $26,249.20 to a car dealership to purchase a used truck for Clark's use.

Moffitt passed away in 2018, leaving McKee and Clark as the remaining joint tenants. In November 2020, shortly before his death, McKee entered an Installment Contract for Deed with Steven Sandgren and Brent Sandgren to sell the entire 40-acre parcel for $125,000. The contract acknowledged that McKee acquired joint tenancy in the property in 2011 and that McKee and Clark were the remaining joint tenants. The contract also contained a claim from McKee that he could convey the entire property, notwithstanding the joint tenancy, because Clark had abandoned his interest. On November 13, 2020, an Affidavit of Interest in Real Property, along with the Installment

3

Contract for Deed, was recorded with the Jefferson County Register of Deeds. The parties agree that Clark had no notice of this contract at the time it was entered.

McKee died in January 2021. On July 7, 2021, having learned of the existence of the contract between McKee and the Sandgrens, Clark filed a petition to quiet title against McKee, McKee's estate, Alana Janel Plummer, Steven Sandgren, Brent Sandgren, and Quicken Loans. Clark asked the court to find that he was the surviving joint tenant after McKee's death and thus the sole owner of the property except for any mortgage interest of Quicken Loans. Clark also sought immediate possession of the property and the return of Moffitt's personal property that was present on the real property at the time of her death.

Brent Sandgren filed a counterclaim asserting that the real estate should be awarded solely to him based on his contract with McKee, and because Clark had abandoned the property. Plummer also filed a counterclaim, claiming the property was owned by McKee and bequeathed to her in his will. In addition, Brent Sandgren and Plummer filed crossclaims against Steven Sandgren related to Moffitt's personal property. Plummer later assigned her claims to Brent Sandgren and the claims between Brent Sandgren and Steve Sandgren were settled.

In a separate action filed in 2022, Quicken Loans (Rocket Mortgage) foreclosed the mortgage on the farm that had been created by Moffitt, McKee, and Clark in 2017. A judgment of foreclosure was entered and notice of sale was filed on April 19, 2023, but the property was not sold because Clark made payments to bring the loan current.

In the present case, a two-day bench trial was held in June 2024. The district court granted a motion for "directed verdict" quieting title to Moffitt's personal property which is not challenged in this appeal. Steven Sandgren was dismissed from the case after he disclaimed any interest in the property and the parties announced all claims involving

4

Steven Sandgren were resolved. The remaining issues before the court were the petition and counterpetitions to quiet title to the real estate. The district court resolved those claims by granting a motion for "directed verdict" made by Brent Sandgren, finding that McKee's intent to terminate the joint tenancy was demonstrated through his actions in executing a contract to convey the property to a third party and by taking action to divest himself of the property, such as vacating the residence and turning the keys and garage door openers over to the Sandgrens. The district court found that Clark did not abandon the property as Brent Sandgren had argued, preserving Clark's interest in the property. The court held that the joint tenancy was severed, and by operation of law, the joint tenancy became a tenancy in common held by Clark and Brent Sandgren. In addition to oral comments made from the bench, the district court ruled in a written journal entry filed on October 15, 2024:

> "Defendant, Brent Sandgren, further moved for a directed verdict on the claim of Plaintiff that the real property was held in joint tenancy with right of survivorship at the time of the death of Defendant, Norman D. McKee. The Court finds that the evidence presented by Plaintiff established an intent by Defendant, Norman D. McKee, to sever the joint tenancy and transfer whatever interest he owned in the real property initially to Defendants Brent Sandgren and Steven M. Sandgren. Defendant, Steven M. Sandgren, has disclaimed any interest in the real property and makes no claim to the same at trial. Therefore, the Court finds that Plaintiff has failed to meet his burden to quiet title in his name in the real property at issue. The Court finds that the joint tenancy with right of survivorship was terminated by the actions of Defendant, Norman D. McKee, as evidenced at trial and that the real property is currently held as tenancy in common between Plaintiff and Defendant, Brent Sandgren.

> "Thereupon, Defendant, Brent Sandgren, presents his evidence regarding his claim that Plaintiff abandoned any interest in the real property. The court finds that Defendant, Brent Sandgren, has failed to present a recognizable claim for this cause of action and even if one existed that Defendant, Brent Sandgren, failed to meet his burden in establishing that Plaintiff had abandoned his ownership interest in the real property as a result of any of Plaintiff's actions."

5

Clark timely appeals. Brent Sandgren and Alana Janel Plummer filed a joint brief in the appeal and will be collectively referred to as "Appellees."

ANALYSIS

DID THE DISTRICT COURT ERR IN ITS DETERMINATION OF THE PETITION TO QUIET TITLE?

*Preservation*

In their brief, the Appellees argue that Clark failed to provide "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on" in violation of Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36). The Appellees argue that Clark's violation of the rule means his issue is not properly preserved.

Clark has couched his claim as one based on the lack of merchantable title in the contract between McKee and Sandgren. In support of his argument, Clark provided a pinpoint cite to the Installment Contract for Deed within his brief, as well as the trial transcript where it was discussed extensively. Clark also provided a pinpoint cite to his motion for partial summary judgment filed in district court, where he argued the Installment Contract was null and void because McKee had failed to convey marketable title. The trial transcript also indicates that following the directed verdict in favor of Brent Sandgren, counsel for Clark asked the judge for clarification on the issue of marketable title. The district court replied that it did not believe this issue would "carry the day for the narrow issue that I'm looking at, which is the intent." Clark properly preserved the issue for appeal.

*Standard of Review*

The Appellees correctly note that the district court granted a motion for "directed verdict" in this case, and that term only applies to a motion made within a jury trial. It is

6

not uncommon for courts and parties to use the term "directed verdict" within a bench trial. Such a motion made prior to the conclusion of a bench trial is a motion for judgment on partial findings pursuant to K.S.A. 60-252(c). See *MFA Enterprises, Inc. v. Delange*, 50 Kan. App. 2d 1049, 1053, 336 P.3d 891 (2014).

> "(c) *Judgment on partial findings.* If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." K.S.A. 60-252(c).

The Appellees argue that the district court's decision should instead be reviewed under K.S.A. 60-241(b) as an involuntary dismissal, citing *Lyons v. Holder*, 38 Kan. App. 2d 131, 135, 163 P.3d 343 (2007). But the panel in *Lyons* pointed out that a motion for involuntary dismissal is now referred to as a motion for judgment on partial findings. "In ruling on a motion for involuntary dismissal (now judgment on partial findings) during a bench trial, the district judge has the power to weigh and evaluate the evidence in the same manner as if he or she were adjudicating the case on the merits and making findings of fact at the conclusion of the entire case." 38 Kan. App. 2d at 135.

Thus, in this case, "we must look to see if the district court's findings were supported by substantial competent evidence. Next, we must determine whether judgment as a matter of law was proper." *MFA Enterprises, Inc.*, 50 Kan. App. 2d at 1054.

Additionally, an appellate court exercises unlimited review over the interpretation and legal effect of written instruments. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

*Our relevant facts are not in dispute.*

The parties agree that Adalee Moffitt owned a 40-acre farm in Jefferson County, Kansas. They also agree that Moffitt created a joint tenancy with rights of survivorship between Moffitt, Carrol Clark, and Norman McKee when she recorded a joint tenancy warranty deed with the Jefferson County Register of Deeds.

It is further uncontroverted that McKee entered an Installment Contract for Deed in November 2020 with Steven Sandgren and Brent Sandgren to sell the entire 40-acre parcel for $125,000. The contract acknowledged the existence of the joint tenancy with Clark but stated that McKee had the power to convey the entire property because Clark had abandoned it. The evidence at trial was that McKee also gave his keys and garage door openers to the residence on the property to Steven Sandgren and vacated the property. And Clark does not dispute the testimony at trial from several witnesses that it was McKee's intent to divest himself of the property and move to Colorado. McKee died in January 2021—a few months after executing the Installment Contract for Deed.

*A joint tenancy is created—and terminated.*

In Kansas, there are two ways to jointly own real estate—as tenants in common or as joint tenants with rights of survivorship. The Kansas Supreme Court recently described both:

> "Property in Kansas may be jointly owned as tenants in common or as joint tenants with rights of survivorship. Tenancy in common is defined as 'tenancy by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property but no right of survivorship.' Black's Law Dictionary 1769 (11th ed. 2019). A joint tenancy 'differs from a tenancy in common because each joint tenant has a right of survivorship to the other's share.' Black's Law Dictionary 1767 (11th ed. 2019)." *M & I Marshall & Ilsley Bank v. Higdon*, 319 Kan. 572, 579, 556 P.3d 498 (2024).

8

Here, there is no dispute that after the death of Moffitt, a joint tenancy with rights of survivorship remained between Clark and McKee. The question before us is whether McKee's intent and actions terminated that joint tenancy.

"A joint tenant may unilaterally sever his or her joint tenancy interest in real property and create a tenancy in common by conveying his or her interest to a third person." *Reicherter v. McCauley*, 47 Kan. App. 2d 968, Syl. ¶ 2, 283 P.3d 219 (2012). "We point this out to emphasize that whatever interest a joint owner has in real estate it is freely transferable, that is, it can be sold or given to someone else. There is no need for the party seeking transfer of ownership to first give notice to, or obtain the consent of, the remaining tenant to effectuate the conveyance." 47 Kan. App. 2d at 972.

A joint tenancy may be terminated in a number of ways. See *Campbell v. Black*, 17 Kan. App. 2d 799, 804, 844 P.2d 759 (1993) (noting severance by mutual agreement of the parties, by course of conduct indicating tenancy in common, or by operation of law upon destruction of one or more of the required unities [time, title, interest, and possession]). Eleven years after *Campbell* was decided, the Kansas Supreme Court described the methods of terminating a joint tenancy in *Nicholas v. Nicholas*, 277 Kan. 171, 186, 83 P.3d 214 (2004):

> "'A joint tenancy may be terminated (1) by mutual agreement of the parties, (2) by course of conduct indicating tenancy in common, or (3) by operation of law upon destruction of one or more of the required unities (time, title, interest, and possession). [Citation omitted.]'"

The court in *Nicholas* noted that strict reliance on the traditional doctrine of the four unities is no longer favored. Rather, it held that when determining whether a joint tenancy has been severed, the district court should primarily consider intent coupled with what effective action was taken. *Nicholas*, 277 Kan. at 186; see also *Commerce Bank v. Posey*, No. 110,789, 2014 WL 4231298, at *5 (Kan. App. 2014) (unpublished opinion)

9

(finding actions of withdrawing all funds from joint tenancy accounts, closing the accounts, and depositing the funds in new accounts demonstrated intent to sever a joint tenancy).

Here, Clark does not dispute that McKee entered into a contract with Steven Sandgren and Brent Sandgren for the purpose of terminating the joint tenancy. And Clark does not dispute the evidence in the record that McKee had handed over his keys and garage door openers to Steven Sandgren and vacated the premises. It is also uncontroverted that McKee indicated he was moving to Colorado. The district court held that the joint tenancy was severed because McKee's actions demonstrated his intent to sever the joint tenancy. In its order, it stated, "The Court finds that the joint tenancy with right of survivorship was terminated by the actions of Defendant, Norman D. McKee, as evidenced at trial and that the real property is currently held as tenancy in common between Plaintiff and Defendant, Brent Sandgren." Its comments from the bench provided additional context for its ruling. At the conclusion of the first day of trial, the district court discussed Brent Sandgren's pending motion for directed verdict. The court questioned:

> "So even if the contract is null and void, do we even need a contract? Isn't the fact that even if I accept your argument and say, you're right, the contract fails and is null and void for a couple of different reasons that you've cited, number one, he didn't have a good title to deliver, he couldn't have, but isn't the fact of—that Mr. McKee made an attempt and created an installment contract for deed, or some attorney did, apparently at his direction or acquiescence, because he signed it? And with the testimony we have today, as was quoted by counsel, that I'm out of here, I just want to travel, I'm done with this, I don't want to make the payments, whatever that was specifically, isn't that all that is required to terminate that joint tenancy and intent?"

On day two of the trial, having taken the motion for directed verdict under advisement, the district court ruled:

10

"The evidence that was heard yesterday was that the parties, which was Mr. McKee and the Sandgrens, prepared and signed an installment contract for deed for the sale of whatever his interest in the property was. That there was prepared and filed an affidavit of equitable interest that was filed in the Jefferson County Register of Deeds Office, which is public information to the entire world. And the purpose of that document is to put the whole world on notice that—and filed with it is the contract for deed—that there is a contract for deed on that property.

"Additionally, we had testimony from Steve Sandgren that Mr. McKee said he wanted to be done with the property, he wanted to travel, he didn't want to deal with the mortgage any longer and the payments, and Mr. McKee turned possession of the property itself over to him. And, in fact, as you stated, counsel, the testimony was that Mr. McKee handed him the keys and garage doors openers to the property and vacated shortly thereafter in early November.

"The Court finds that the evidence that has been presented so far shows that Mr. McKee has shown an intent to sever the joint tenancy between he and the Plaintiff, and that therefore, it was severed."

Clark does not appeal the factual findings of the court. And the court's findings are supported by substantial competent evidence. Here, there is evidence of McKee's intent to sever the joint tenancy and his actions related to that intent. The district court correctly concluded that McKee terminated the joint tenancy.

*A lack of "merchantable title" does not prevent the termination of the joint tenancy.*

The crux of Clark's argument on appeal is that language in the Installment Contract for Deed prevents the termination of the joint tenancy. Clark reasons that because McKee could not provide "merchantable title," the contract was void, and could not serve to terminate the joint tenancy.

We note that the terms "merchantable" and "marketable" title are used interchangeably within the context of contracts concerning land. See *Tri-State Hotel Co. v. Sphinx Investment Co.*, 212 Kan. 234, 241, 510 P.2d 1223 (1973). "'A marketable title is one which is free from reasonable doubt and will not expose the party who holds it to the hazards of litigation.'" 212 Kan. at 242. Clark argues that any potential purchaser of the real estate at issue would have had reasonable doubt as to its title, especially considering the contract language indicated that Clark was a record title owner.

It is true that McKee did not have marketable title for what he purported to sell. See 212 Kan. at 242. McKee contracted to sell the entire 40-acre farm. McKee could not provide title to the entire tract at the time the contract was executed because of Clark's interest as a joint tenant and that fact was readily apparent from the language of the contract.

But it is the second step of Clark's analysis that fails. Clark argues that because McKee could not convey marketable title, paragraph twelve of the contract was triggered, which states:

"12. In the event Seller is unable to furnish merchantable title, this Contract shall be null and void, and Seller shall return all monies paid under this Contract to Purchaser and all papers executed by the parties shall be returned to the perspective parties entitled thereto, and thereupon, all rights of the parties shall end."

Clark believes that because McKee could not furnish merchantable title, the contract between McKee and the Sandgrens must be considered null and void and could not serve as a document that severed the joint tenancy. Clark concludes that because the joint tenancy was never severed, he is the sole owner of the property as the last surviving member of the joint tenancy between Clark and McKee.

12

Clark's reliance on the contract language is misplaced. The lack of marketable title under the Installment Contract for Deed does not preclude a finding that McKee's intent and actions terminated the joint tenancy.

What Clark fails to recognize is that the contract did not serve as a document that the district court relied upon to sever the joint tenancy; rather, the district court considered McKee's participation in the contract as evidence of his intent and actions related to severing the joint tenancy. Successful performance of the contract was not necessary for the district court to make a finding of intent to sever. After the district court found in favor of the Appellees, and found a tenancy in common had been created, Clark asked the district court to clarify its ruling as it related to his claim of marketable title. The district court responded,

> "[T]he Court would, I guess, note that marketable title may not be able to be delivered; I
> don't know. But the Court, I guess, to answer your question, I don't think that's an issue
> for this Court. That would probably be an issue between the two parties to the contract,
> which would, in my opinion, need to be taken up in Mr. McKee's probate estate case that
> is currently still open."

As the district court pointed out, any challenge to the validity of the contract would be made by McKee's estate and its beneficiaries against Brent Sandgren. McKee was free to transfer his interest without Clark's knowledge or consent. And McKee was free to transfer, in any acceptable means to the transferee, "whatever interest" he had as a joint owner. See *Reicherter*, 47 Kan. App. 2d at 972.

The district court was correct that the issue of marketable title was not relevant to its consideration of whether there was evidence the joint tenancy was severed. The district court found that McKee's actions to transfer the real estate through the contract was evidence of his intent. In addition, the district court properly considered evidence that McKee had stopped living at the property, had given his keys and garage door

13

openers to Steven Sandgren, and had indicated his intent to move permanently to Colorado. Clark did not appeal the district court's factual findings, and they were supported by substantial competent evidence.

The district court correctly found that the *validity* of the Installment Contract for Deed was immaterial to whether McKee intended to sever the joint tenancy.

*Once the joint tenancy with rights of survivorship was terminated, a tenancy in common was created.*

Having concluded that McKee's intent and actions operated to sever the joint tenancy, we now determine the remaining property interest. Once a joint tenancy interest is severed, a tenancy in common is created. *Hall v. Hamilton*, 233 Kan. 880, 885, 667 P.2d 350 (1983). The district court made the correct legal determination here, finding that after the termination of a joint tenancy by McKee, the property became owned by Clark and Brent Sandgren as tenants in common. For Clark, the practical result is that he continues to own one-half of the property, as he did before McKee's death.

Affirmed.

14